UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOHN F. DRISCOLL, as President of the Captains
Endowment Association, Inc., and the CAPTAINS
ENDOWMENT ASSOCIATION, INC.,

                            Plaintiffs,

            v.

CITY OF NEW YORK, the NEW YORK CITY
POLICE DEPARTMENT, and RAYMOND W.
KELLY, as Commissioner of the New York City
Police Department,

                            Defendants.
-----------------------------------------------------------------X

**COMPLAINT FOR A
DECLARATORY
JUDGMENT AND
INJUNCTIVE RELIEF**

_07_ CIV _10359_(___)(___)

        Plaintiffs JOHN F. DRISCOLL and CAPTAINS ENDOWMENT ASSOCIATION,

INC., by their attorneys, Greenberg Burzichelli Greenberg P.C., as and for their

complaint against defendants, allege as follows:

### NATURE OF ACTION

        1.  This is a civil action for a declaratory judgment and injunctive relief based

upon defendants' violations of the Fourth, Fifth, Ninth, and Fourteenth Amendments to

the United States Constitution and Article I, § 12 of the New York State Constitution.

        2.  Plaintiffs bring this action pursuant to 28 U.S.C. § § 2201 and 2202 for a

declaration of rights of the parties and for certain injunctive relief that may be necessary

and proper to protect the constitutional rights of plaintiffs and plaintiffs' members and to

enjoin defendants from the continued unilateral implementation of a policy requiring the

alcohol testing of plaintiffs and plaintiffs' members under the circumstances described

herein.

## JURISDICTION & VENUE

3.  The jurisdiction of this Court over the federal law claims brought herein arises under 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

5.  Plaintiff John F. Driscoll is the President of the Captains Endowment Association, Inc.

6.  Plaintiff Captains Endowment Association, Inc. ("CEA") is a municipal employee organization duly formed under the New York City Administrative Code and is the sole and exclusive bargaining representative for all of its members, who consist of more than 700 sworn officers in the highest ranks of the New York City Police Department.

7.  Defendant City of New York ("City") is a municipal corporation, duly organized and existing under the laws of the State of New York.  Its principal place of business is in the County of New York, City of New York, State of New York.  It is also a public employer within Section 201 of the New York State Civil Service Law and under Section 12-303 of the New York City Collective Bargaining Law.

8.  Defendant New York City Police Department ("Department") is a department of City government, established pursuant to Chapter 18 of the Charter of the City of New York.

9.  Defendant Raymond W. Kelly ("Kelly) was and continues to be, for all times

2

relevant, Commissioner of the New York City Police Department and is responsible for the operation of the Department.

## THE FACTS

10.  On November 25, 2006, in what quickly became nationwide news and cause celebre for many prominent civil rights activists, several New York City police officers were involved in a shooting outside a topless bar in Jamaica, Queens which led to the death of Sean Bell, a 23 year old black male who, it was later learned, was unarmed.

11.  Approximately one week later, probably in part to calm a minority community upset over the shooting, Commissioner Kelly appointed a nine-member panel to review the Department's undercover operations.  The investigative panel was led by Chief Charles Campisi, who heads the Department's Internal Affairs Bureau.

12.  According to a December 2, 2006, article in the *New York Post*, although not specifically charged with addressing the Sean Bell shooting, Kelly acknowledged that the panel's recommendations would probably be based "on any lessons learned that arise from it."

13.  In March 2007, three of the officers involved in the Bell shooting were indicted by a grand jury for crimes which include manslaughter.  The officers have pled not guilty.

14.  On June 18, 2007, Commissioner Kelly publicly disclosed the 19 recommendations made by the special panel. Among the many recommendations was that the Department "[r]equire the administration of a Breathalyzer test in all cases in which a member of the service is involved in a firearms discharge incident, on duty or

3

off duty, which results in injury or death."

15. Upon information and belief, Kelly directed his executive staff to devise plans to implement the recommendations, specifically citing alcohol testing and expressing a desire to begin such testing in September.

16. Several months later, on September 30, 2007, Interim Order No. 52 ("the Order") was issued at the direction of Commissioner Kelly. The Order mandates alcohol testing of all uniformed officers who discharge their weapons, whether on duty or off duty, in New York City. Attached hereto as Exhibit No. 1 is a copy of the Order.

17. The Order sets forth specific procedures to be followed when involved in or responding to the scene where an officer discharged his firearm, resulting in injury to or death of a person, on or off duty. The following is a summary of the procedures as described in the Order:

a. The uniformed member must request immediate response of a patrol supervisor and must comply with the provisions of P.G.P. 212-29, "Firearms Discharge by Uniformed Members of the Service."

b. The patrol supervisor must immediately notify Operations Unit of the shooting and request response of Internal Affairs Duty Captain, Internal Affairs personnel and the Patrol Services Bureau Duty Inspector and Duty Captain.

c. The Duty Captain / Inspector is required to: i) inform the uniformed member(s) who discharged their weapon that they will be subject to alcohol testing; ii) ensure involved members remain on the scene, unless hospitalization is immediately required, pending arrival of

4

Internal Affairs personnel assigned to administer the alcohol test; and iii) notify Internal Affairs if any involved members are removed from the scene.

d.     Internal Affairs Bureau Command Center is responsible for notifying assigned personnel and the Duty Captain of any pertinent information including any change of location.

e.     After the Internal Affairs Duty Captain responds to the location and confers with the Duty Captain / Inspector on the scene, he/she is required to advise the subject member that he/she may be tested by a number of different means, including portable breathalyzer test ("PBT") and the Intoxilyzer.

f.     The Internal Affairs Duty Captain is to conduct an alcohol test, using the PBT, of the subject member in "a private setting" such as the nearest Department facility.  However, a supervisor's Department vehicle may also be used according to the Order.

g.     If the PBT device signals a reading of less than 0.08, "no further testing is required **at this time**" [emphasis added].

h.     If the reading of the PBT devise is 0.08 or greater, Highway I.D.T.U. is to be notified so that the member may be tested using the Intoxilyzer.  The subject member will be transported to the Internal Affairs Bureau testing facility so that the Intoxilyzer test may be performed.  The Order provides that "[t]he entire Intoxilyzer testing process, including the reading of the test results, will be

5

videotaped by another member of the Highway District. In cases where there is an Intoxilyzer reading of .08 or greater, a copy of the videotape will be provided to the I.A.B. Duty Captain concerned, who will follow all applicable Departmental procedures to safeguard the tape for evidentiary purposes."

i.    The Internal Affairs Duty Captain is to make a determination, based on the Intoxilyzer reading, the PBT reading, and other "related indicia of intoxication" whether the subject member is fit for duty. If the member is found to be unfit for duty, the procedures contained in relevant Patrol Guides are to be followed.

18.  Prior to the issuance of the Order, the Department already had numerous policies and procedures in place for alcohol / drug testing of uniformed officers. It is undisputed that all members of the Department are subject to random drug testing and that the Department may test employees upon whom a reasonable suspicion exists of drug use or intoxication. Individuals assigned to certain special units, those up for promotions, and certain transfers also permit the Department to further test them.

19.  Also prior to the issuance of the Order, the Department already had numerous policies and procedures in place regarding the handling of firearms discharges and discharges by intoxicated members. Those patrol and procedure guides were referenced in the Order and include Patrol Guide Procedure ("PGP) No. 204-08 ("Firearms - General Regulations"), No. 206-12 ("Removal of Firearms from Intoxicated Uniformed Members of the Service"), and No. 212-29 ("Firearms Discharge by Uniformed Members of the Service"). Copies of these PGPs are attached hereto as

6

Exhibit No. 2.

20. The Order also references Patrol Guide Procedure No. 203-04 ("Fitness For Duty"), attached as Exhibit No. 3, which explicitly provides:

FITNESS FOR DUTY

1.   Be fit for duty at all times, except when on sick report.
2.   Do not consume intoxicants to the extent that member becomes unfit for duty.

[Rev 00-3] ADDITIONAL DATA

*All members of the service are required to remain fit for duty as specified above, and are reminded of their absolute responsibility to remain fit for duty while in possession of their firearms.*

*Any misconduct involving a Member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department....*

*Furthermore, any misconduct involving members who are found to be unfit for duty due to excessive consumption and intoxication from alcohol, while armed with a firearm, will result in the inclusion of the charge of "Unfit For Duty While Armed," in Departmental disciplinary proceedings....*

*Additionally, a uniformed member of the service who refuses to submit to chemical testing in connection with an alleged violation of section 1192 of the New York State Vehicle and Traffic Law (Driving While Intoxicated) will be charged with violating Patrol Guide procedure 203-10, page 1, step 4, "Engaging in conduct prejudicial to the good order, efficiency, or discipline of the Department....*

21. Since the Order was issued, there have been incidents involving officers who have discharged their weapons. Although no reasonable suspicion existed to do so, officers have been tested and the results of those tests have been made public; all have been cleared as not intoxicated.

## FIRST CAUSE OF ACTION
### (Unlawful Search)

22.    Plaintiffs repeat, reallege and incorporate all of the preceding paragraphs as if fully set forth herein.

23.    The Fourth Amendment to the Constitution of the United States, which applies to the States through the Fourteenth Amendment, provides in part that the "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

24.    Similarly, Article I, § 12 of the Constitution of the State of New York provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

25.    A breathalyzer or other alcohol test constitutes a search under the Fourth and Fourteenth Amendments to the United States Constitution.

26.    Implementation and enforcement of the Order results in a search of Department members without reasonable suspicion and without a warrant.  Pursuant to the express terms of the Order, the alcohol testing would be required even when uniformed members of the Department committed no unlawful acts nor engaged in any other activities that would otherwise justify such a search and seizure.

27.    Current policies and procedures are already in place to monitor an officer's fitness for duty and for testing of drug abuse or intoxication.  These policies and procedures are less intrusive and meet the same goal which the Order expressly cites;

that is, "to ensure the highest levels of integrity at the scene of police involved firearms discharges which results in injury to or death of a person, on or off duty, within New York City."

28.  The Department has demonstrated no basis of abuse or safety concerns which would require enforcement of the Order without reasonable suspicion.

29.  Implementation of the Order, therefore, constitutes violations of the right to be protected against unreasonable searches and seizures guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, § 12 of the Constitution of the State of New York.

30.  The violation of the fundamental right to be free from unreasonable government searches and seizures constitutes an irreparable injury.  Once the testing is administered, the damage is done and cannot be restored.

31.  Thus, plaintiffs are entitled to an injunction enjoining defendants from further implementation of the Order.

### SECOND CAUSE OF ACTION
### (Procedural and Substantive Due Process)

32.  Plaintiffs repeat, reallege and incorporate all of the preceding paragraphs as if fully set forth herein.

33.  The Fifth Amendment to the United States Constitution provides, in part, that no person "shall be deprived of life, liberty, or property, without due process of law . . . ."

34.  The Fourteenth Amendment to the United States Constitution makes the rights and protections expressed in the Fifth Amendment fully applicable to state action. It provides, in part, that no State shall "deprive any person of life, liberty, or property,

9

without due process of law . . . ."

35.  The Order serves no compelling government interest.  The alcohol testing at issue is non-routine, is conducted without consent, and provides no procedures by which to address false positives.  Furthermore, no safeguards exist to protect the publication of the test results.

36.  The Order permits alcohol testing in full public view (i.e., in a supervisor's car at the scene) and explicitly requires videotaping for "evidentiary purposes."

37.  Hence, the involuntary alcohol testing prescribed by the Order violates both procedural and substantive due process rights guaranteed by the Due Process clauses of the Fifth and Fourteenth Amendments.

38.  The irreparable harm that is caused by the further enforcement of the Order cannot be compensated by money damages.  Therefore, plaintiffs are entitled to an injunction enjoining defendants from further enforcing the Order.

### THIRD CAUSE OF ACTION
### (Privacy and Due Process)

39.  Plaintiffs repeat, reallege and incorporate all of the preceding paragraphs as if fully set forth herein.

40.  It is well-established that individuals possess a constitutional right to privacy "as gleaned from the penumbra of rights established by the Bill of Rights."  These rights emanate from the Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution.

41.  The alcohol test constitutes an unreasonable search in violation of the Fourth Amendment and the requirement of the officer to submit to the search and

10

seizure by taking the alcohol test if he/she wanted to keep his/her job invades that officer's privacy.

42. The requirement that officers be required to submit to such an intrusive and unreasonable alcohol test, without due process, is a deprivation of an interest in privacy that is an aspect of the liberty protected by the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

43. The Ninth Amendment to the United States Constitution provides that the rights enumerated in the Constitution "shall not be construed to deny or disparage others retained by the people." The Ninth Amendment further protects a citizen's right to privacy in ways not specifically provided in the first eight amendments. The failure to provide sufficient safeguards and the fact that there were already less intrusive means available by which to meet the objectives sought by the Department constitutes a violation of officers' right to privacy.

44. No monetary compensation can undo the testing at issue. Additionally, the lack of sufficient safeguards against publication of test results, results which are arrived out without affording the officer due process, can tarnish the subject's reputation.

45. Hence, plaintiffs are entitled to an injunction which permanently enjoins defendants from enforcing the Order.

## RELIEF REQUESTED

WHEREFORE, plaintiffs pray this Court to:

1. Enter a declaratory judgment that the aforesaid Interim Order issued, implemented, and enforced by defendants:

11

a. violates the constitutional rights of plaintiffs and plaintiffs' members to be protected against unreasonable search pursuant to U.S. Const., Amend. 4 and 14 and N.Y. Const. art. I, § 12;

b. violates the procedural and substantive due process rights of plaintiffs and plaintiffs' members under U.S. Const. Amend. 5 and 14; and

c. violates the liberty interests and privacy rights of plaintiffs and plaintiffs' members that is found among the penumbra of rights established under the Bill of Rights.

2. Issue preliminary and permanent injunctions compelling defendants to cease and desist from implementing and enforcing the Interim Order described herein as against plaintiffs and plaintiffs' members.

3. Award plaintiffs their costs expended herein together with reasonable attorney's fees

DATED this _1V_ day of November, 2007.

Respectfully submitted,

Greenberg Burzichelli Greenberg P.C.

By: _____

Harry Greenberg (HG4178)
Robert J. Burzichelli (RB2004)
Seth H. Greenberg (SG4930)

3000 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
Tel: (516) 570-4343
Fax: (516) 570-4348

*Counsel for Plaintiffs*

12

## VERIFICATION

STATE OF NEW YORK                )
                                                      )ss.:
COUNTY OF NEW YORK            )

JOHN F. DRISCOLL, being duly sworn, deposes and says:

I am the President of the Captains Endowment Association, Inc. ("CEA"), a plaintiff in the within action and a named Plaintiff in my capacity as President of the CEA. I have read and know the contents of the foregoing Complaint. The Complaint is true to my own knowledge, except as to matters alleged upon information and belief, and as to those matters I believe it to be true. The verification is made by me because the above party is an incorporated Union and I am a member and officer thereof. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records and documents maintained or obtained by the Union.

_____
JOHN F. DRISCOLL

Sworn to before me this
12th day of November 2007.

_____
Notary Public

HARRY GREENBERG
Notary Public, State of New York
No. 492008
Qualified in Nassau County
Commission Expires January 25, 20 10





## INTERIM ORDER

| SUBJECT: ALCOHOL TESTING FOR UNIFORMED MEMBERS OF THE SERVICE INVOLVED IN FIREARMS DISCHARGES RESULTING IN INJURY TO OR DEATH OF A PERSON |

| DATE ISSUED: | REFERENCE: | NUMBER: |
|---|---|---|
| 09-30-07 | **P.G. 212 SERIES | 52 |

1.     In an effort to ensure the highest levels of integrity at the scene of firearms discharges, all uniformed members of the service involved in firearms discharges, which result in injury to or death of a person, will be subject to Department administered alcohol testing.

2.     Accordingly, when a uniformed member of the service, on or off duty, is involved in a firearms discharge within New York City which results in injury to or death of a person, the following procedure will be complied with:

| PURPOSE | To ensure the highest levels of integrity at the scene of police involved firearms discharges which result in injury to or death of a person, on or off duty, within New York City. |
|---|---|

| PROCEDURE | When involved in, or responding to the scene of a police involved firearms discharge which results in injury to or death of a person, on or off duty, within New York City: |
|---|---|

**UNIFORMED MEMBER OF THE SERVICE**

1.     Request immediate response of patrol supervisor.
2.     Comply with the provisions of *P.G. 212-29, "Firearms Discharge by Uniformed Members of the Service."*

**PATROL SUPERVISOR**

3.     Notify Operations Unit of shooting, immediately, and request response of Internal Affairs Duty Captain, Internal Affairs personnel and the Patrol Services Bureau Duty Inspector and Duty Captain.

**DUTY CAPTAIN/ INSPECTOR**

4.     Inform uniformed member(s) of the service who discharged their firearm that they will be subject to alcohol testing.
5.     Ensure involved member(s) of the service remain on the scene when feasible and consistent with safety (i.e., hospitalization not immediately required); pending arrival of Internal Affairs Bureau personnel assigned to administer alcohol test.
6.     Notify IAB Command Center of location of involved member(s) of the service if they are removed from location of firearms discharge.

**IAB COMMAND CENTER**

7.     Notify assigned IAB personnel and the IAB Duty Captain of any pertinent information including any change of location of involved member(s) of the service.

| INTERNAL | 8. | Respond to location and confer with Duty Captain/Inspector on scene. |
| AFFAIRS | 9. | Advise the subject member that he or she may be tested by a number of |
| BUREAU DUTY | | different means, such as the PBT device and the Intoxilyzer. |
| CAPTAIN | 10. | Conduct alcohol test, using a PBT (portable breathalyzer test) device in a private setting, on uniformed member(s) of the service who discharged a firearm. |

<blockquote>
a. Conduct the testing process in a private setting (e.g., Nearest Department facility, Department auto being used by the supervisor concerned) in a dignified, respectful fashion.
</blockquote>

 11. If the reading on the PBT device is less than .08, no further testing is required at this time.

 12. If the reading on the PBT device is .08 or greater, which according to Section 1192 of the Vehicle and Traffic Law of the State of New York is indicative of intoxication, immediately notify Highway I.D.T.U. to respond to the IAB testing location to test the subject member using the Intoxilyzer that is maintained at the IAB facility. (It should be emphasized that the Intoxilyzer test at the IAB facility will be conducted by an I.D.T.U. technician.)

<blockquote>
a. Member(s) involved will be transported to the IAB testing facility by IAB personnel.

b. A Highway District supervisor must be present during all phases of the testing procedure.
</blockquote>

 13. In the event that alternate arrangements must be made, the Intoxilyzer test will be conducted at the closest I.D.T.U. facility.

<blockquote>
a. Member(s) involved will be transported to the I.D.T.U. testing facility by I.A.B. personnel.

b. A Highway District supervisor must be present during all phases of the testing procedure.
</blockquote>

*NOTE*

*The I.D.T.U technician will utilize a specially developed form entitled Ordered Breath Test Instruction Sheet to interview the subject member(s), and a specially developed checklist entitled Intoxilyzer Operational Checklist to conduct the test. The entire Intoxilyzer testing process, including the reading of the test results, will be videotaped by another member of the Highway District. In cases where there is an Intoxilyzer reading of .08 or greater, a copy of the videotape will be provided to the I.A.B. Duty Captain concerned, who will follow all applicable Departmental procedures to safeguard the tape for evidentiary purposes.*

| INTERNAL | 14. | In order to determine fitness for duty, record and then take into account the |
| AFFAIRS | | Intoxilyzer reading, the PBT reading, and any other related indicia of intoxication, |
| BUREAU DUTY | | as indicated in Appendix "A". |
| CAPTAIN | | |

<blockquote>
a. If the member is apparently unfit for duty, be guided by the procedures contained in *P.G. 206-12, "Removal of Firearms from Intoxicated Uniformed Member of the Service"* and other appropriate Department procedures.
</blockquote>

*NOTE*

*If the subject member is determined to be unfit for duty, the IAB Command Center will be notified at (212) 741-8401 and a log number will be obtained.*

INTERIM ORDER NO. 52

ADDITIONAL
DATA

*Members of the service are reminded of the contents of Patrol Guide procedures 203-04, "Fitness For Duty" and 204-08, "Firearms — General Regulations" as they relate to the use of alcohol and the possession of firearms while off duty.*

*Members should be aware that it would be prudent not to ingest alcoholic beverages up to four (4) hours prior to the commencement of their tour of duty.*

RELATED
PROCEDURES

*Firearms Discharge by Uniformed Members of the Service (P.G. 212-29)*
*Removal of Firearms from Intoxicated Uniformed Member of the Service (P.G. 206-12)*

3.    Any provisions of the Department Manual or any other Department directive in conflict with the contents of this order are suspended.

## BY DIRECTION OF THE POLICE COMMISSIONER

DISTRIBUTION
All Commands

APPENDIX "A"

INDICIA OF INTOXICATION

Face to face observation and interaction with the subject member allows the supervisor concerned to use his or her senses to obtain "evidence" of alcohol intoxication:

* The sense of sight
* The sense of hearing
* The sense of smell

SIGHT

* Bloodshot eyes
* Flushed face
* Soiled, mussed, disarrayed clothing
* Fumbling (e.g., dropping paperwork, keys etc.)
* The presence of alcohol containers
* Physical coordination (e.g., swaying, staggering, unsteady, falling, wobbling, sagging knees, using a wall or furniture as a prop)
* Unusual actions (e.g., hiccupping, belching, vomiting, fighting, sleepy, urinating)

HEARING

* Slurred speech
* Admission of drinking
* Inconsistent responses
* Incoherent
* Abusive language, profanity
* Antagonistic
* Unusual statements

SMELL

* Odor of alcohol on breath
* "Cover Up" odors (e.g., breath spray, mints)
* Open alcoholic beverages
* Unusual odors

NOTE:            These traits are illustrative; this is not meant to be a complete list of indicia.

INTERIM ORDER NO. 52

Procedure No: 204-08                                Date Effective: 02-28-01

## FIREARMS – GENERAL REGULATIONS

EQUIPMENT FIREARMS

1. Be armed at all times when in New York City, unless otherwise directed, or except as provided in item 2 below, with:
   a. Service revolver/pistol or off duty revolver/pistol as specified in *P.G. 204-09, "Required Firearms And Equipment."*
2. Be unarmed at own discretion while off duty when:
   a. Possession of firearm, under the circumstances, would unnecessarily create a risk of loss or theft of the firearm, i.e., participation in sporting activities, attendance at beach and pool, etc., OR
   b. On vacation, OR
   c. Engaged in authorized off duty employment, OR
   d. Engaged in any activity of a nature whereby it would be advisable NOT to carry a firearm, OR
   [REV 3-01] *e. There is a likelihood that member will be consuming alcoholic intoxicants.*

> NOTE *In those instances in which an off duty uniformed member is required to carry a firearm, the member concerned MUST CARRY either the regulation service revolver or pistol, or an authorized off duty revolver or pistol. A uniformed member who performs undercover duty and who has been authorized to carry a special weapon (see A.G. 305-05, "Authorization for Special Weapons") is permitted to carry the special weapon in lieu of the regulation firearms specified in P.G. 204-09 while off duty. The carrying of these firearms while off duty applies within the City and State of New York and also in those states outside New York State which permit visiting police officers to carry firearms within their state boundaries by virtue of their status as police officers.*

3. Record all revolvers and pistols on FORCE RECORD (PD406-143).
   a. Service revolvers/pistols, and off duty revolvers/pistols must conform to the specifications and standards of the Firearms and Tactics Section, Police Academy.
4. Do not modify revolvers or pistols without written permission of the Commanding Officer, Firearms and Tactics Section.
   a. Modifications permitted will be entered on FORCE RECORD.
5. Have service revolvers/pistols, and off duty revolvers/pistols not purchased at the Equipment Section inspected and tested by a Firearms and Tactics Section gunsmith prior to use.
6. Carry handguns (gun collections, etc.), other than service and off duty guns, only while enroute to or from practice range or similar activity.

> NOTE *When carrying such weapons, member must be armed with an authorized on duty or off duty firearm. The firearm being transported that is not authorized for on duty or off duty use shall be unloaded.*

7. Safeguard weapons at all times.
8. Do not store or leave firearm in an unattended motor vehicle.
9. Do not carry firearms in briefcases, handbags, fanny packs, hip packs, tote bags, knapsacks, paper bags or similar devices.

Section:    Uniforms and Equipment                                    101

Procedure:    204-08

10. Carry firearms, on the person, in an appropriate holster specifically designed to afford maximum protection against loss of weapon.

> NOTE _All_ holsters, regardless of type, style, or design (i.e., ankle, shoulder or belt holster) must be specifically designed for the weapon being carried. "One size fits all," "Clip-on," and "belly band" holsters are _prohibited_.

11. Use only approved Department issued ammunition for use in revolvers/pistols.
12. For members authorized to carry service revolver - Ensure that cylinder is fully loaded with appropriate ammunition. Maintain twelve (12) rounds of ammunition in two (2) speedloaders on duty belt.
   a. Keep twelve (12) extra rounds of ammunition in locker at primary place of duty _or_ on the duty belt in two (2) ammo pouches.
13. For members authorized to carry 9MM pistol - Ensure that one (1) round of ammunition is in the chamber and fifteen (15) rounds in the magazine at all times.
   a. Maintain fifteen (15) rounds in each of the two (2) magazines carried on the duty belt.

> NOTE Those uniformed members of the service authorized to carry specialized undercover firearms as per A.G. 305-05, "Authorization for Special Weapons," will also ensure that the maximum number of rounds are loaded in each magazine, and that a round is loaded in the chamber of the weapon, as applicable.

14. Comply with _P.G. 205-03, "Responsibility For Weapons While Sick,"_ if member expects to go on extended sick leave.
15. Carry ONLY authorized firearms when on duty.
   a. Permission of commanding officer is required PRIOR to carrying special weapons while performing duty (see _A.G. 305-05, "Authorization For Special Weapons"_).
16. Do not enter Family Court or Supreme Court Matrimonial Parts while armed if involved, OTHER THAN AS ARRESTING OFFICER OR ON OFFICIAL BUSINESS, in Family Court case or Supreme Court matrimonial case.
   a. Safeguard firearms at a location other than Family Court or Supreme Court OR if within New York City, the member concerned may elect to deliver firearm to desk officer of precinct in which Family Court or Supreme Court is located.
   b. Uniformed member of the service present at Family Court or Supreme Court as an arresting officer or on official business will report to the court officer supervisor and sign the Law Enforcement Officer log.

102

© FPA January, 2002

Procedure No:  206-12

Date Effective:  10-17-03

# REMOVAL OF FIREARMS FROM INTOXICATED UNIFORMED MEMBER OF THE SERVICE

## PURPOSE

To determine if an on/off duty uniformed member of the service is unfit for duty due to intoxication.

## DEFINITION

<u>INTOXICATION</u> - Unfitness for duty due to the influence of alcohol, narcotics, or other drug, or under circumstances in which surrounding events of a timely nature indicate that the member may have been intoxicated during an earlier period directly related to the incident in question.

## PROCEDURE

Upon observing a uniformed member of the service who appears unfit for duty due to intoxication:

## SUPERVISORY MEMBER

1. Direct that member remain at Department facility or other location pending the arrival of commanding officer/duty captain.
2. Prepare, immediately, SUPERVISOR'S FITNESS FOR DUTY REPORT (PD469-150) based upon observations of member of the service.
3. Notify precinct commander/duty captain to respond to facility.

## COMMANDING OFFICER/DUTY CAPTAIN

4. Prepare, immediately, SUPERVISOR'S FITNESS FOR DUTY REPORT based upon observations of member of the service.
5. Conduct an investigation to determine if member is unfit for duty due to intoxication at the time of the alleged misconduct.

> NOTE Common sense standards will be applied to determine whether a member of the service is unfit for duty due to intoxication. Commanding officers/duty captains will examine the totality of the circumstances and will consider all credible relevant information when determining a member's fitness for duty.  Such information will include all SUPERVISOR'S FITNESS FOR DUTY REPORTS prepared, any witness statements made by civilians or members of the service, and any available scientific evidence (Breathalyzer, blood test, etc.).  On the basis of all available information, viewed in light of the time elapsed since any alleged acts of misconduct or since the first supervisory observation of the member, the commanding officer/duty captain will conclude whether the member was unfit for duty at the time of the alleged misconduct.

6. Remove firearms when it is determined that member is intoxicated (see P.G.206-17, "Removal And Restoration Of Firearms").
7. Place member on modified assignment or suspend from duty, as appropriate.
8. Advise member of availability of Counseling Service Program.

Section:  Disciplinary Matters

293

Procedure:    206-12

> NOTE A supervisory officer is mandated in all cases to contact the
> Counseling Services Unit on behalf of a member who is placed on
> modified assignment, suspended, or has his/her firearms removed due
> to being unfit for duty.  The services of the Counseling Service
> Program are not available to personnel for illegal drug use and/or
> abuse problems.

### COMMANDING OFFICER/DUTY CAPTAIN (continued)

9. Have supervisory officer contact Counseling Service <u>DIRECT</u>, during normal business hours.  At other times, conferral with a counselor may be requested by contacting the Sick Desk supervisor.

10. Prepare five (5) copies of all completed **SUPERVISOR'S FITNESS FOR DUTY REPORTS** (commanding officer/duty captain's and referring supervisor's).

11. Prepare seven (7) copies of a report on **Typed Letterhead** detailing observations and circumstances that led to determination that member was unfit for duty and forward each, with copies of all **SUPERVISOR'S FITNESS FOR DUTY REPORTS**, as follows:
    a. First Deputy Commissioner - Original (DIRECT)
    b. First Deputy Commissioner (THOUGH CHANNELS)
    c. Chief of Department (DIRECT)
    d. Chief of Personnel (DIRECT)
    e. Deputy Commissioner – Trials
    f. Department Advocate's Office
    g. Member's commanding officer.

### ADDITIONAL DATA

*Prior to final adjudication of a disciplinary matter, in all misconduct cases in which the use of alcohol is indicated, a conferral with the Early Intervention Unit must be made, and an alcoholism assessment by the Counseling Services Unit, must be conducted.  In addition, in appropriate cases, final adjudication of the disciplinary matter will be held in abeyance pending completion of treatment for alcoholism. The Department Advocate's Office or the Office of the Special Prosecutor, as appropriate, are required to ensure that these steps are taken.*

### RELATED PROCEDURES

*Cause For Suspension Or Modified Assignment (P.G. 206-07)*
*Suspension From Duty (P.G. 206-08)*
*Modified Assignment (P.G. 206-10)*
*Administration Of Drug Screening Tests For Cause (P.G. 205-30)*
*Removal/Restoration Of Firearms (P.G. 206-17)*

### FORMS AND REPORTS

*SUPERVISOR'S FITNESS FOR DUTY REPORT (PD469-150)*
*Type Letterhead*

294                                      © FPA January, 2004

Procedure No:   203-03

6. Keep Department locker neat, clean and secured with combination lock (without identifying serial number) that conforms to Equipment Section specifications.
7. Affix POLICE DON'T MOVE (Misc. 1261) sticker to assigned locker with rank, name, shield and squad number captions filled in.
[I.O. 23 s 01] *8. Affix Gun Safety Sticker (SP414) to assigned locker and at all Department firearms safety stations*
9. Apply for interview with Police Commissioner in writing (include squad or chart numbers), ONLY when action or relief cannot be obtained by other means.

Procedure No:   203-04                                Date Effective:   07-28-00

## FITNESS FOR DUTY

FITNESS FOR DUTY

1. Be fit for duty at all times, except when on sick report.
2. Do not consume intoxicants to the extent that member becomes unfit for duty.

[Rev 00-3] *ADDITIONAL DATA*

[I.O. 7 s 01] *All members of the service are required to remain fit for duty as specified above, and are reminded of their absolute responsibility to remain fit for duty while in possession of their firearms.*

*Any misconduct involving a Member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department. Exceptional cases will be determined by the Police Commissioner, on a case by case basis.*

*Furthermore, any misconduct involving members who are found to be unfit for duty due to excessive consumption and intoxication from alcohol, while armed with a firearm, will result in the inclusion of the charge of "Unfit For Duty While Armed," in Departmental disciplinary proceedings. In addition to those imposed as a result of all other charges stemming from the misconduct, strict punitive sanctions will be imposed for any member upon whom the charge has been substantiated.*

*Additionally, a uniformed member of the service who refuses to submit to chemical testing in connection with an alleged violation of section 1192 of the New York State Vehicle and Traffic Law (Driving While Intoxicated) will be charged with violating Patrol Guide procedure 203-10, page 1, step 4, "Engaging in conduct prejudicial to the good order, efficiency, or discipline of the Department."*

*Members of the service are also reminded of the Department's commitment to the many counseling and assistance programs available for a wide variety of problems. Members who are experiencing problems related to alcohol, or know of any other member who may be experiencing problems related to alcohol, are strongly encouraged to call HELPLINE at (718) 271-7777, in order to achieve confidential assistance.*

62

© FPA July, 2001