UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOHN F. DRISCOLL, as President of the Captains Endowment Association, Inc., and the CAPTAINS ENDOWMENT ASSOCIATION, INC.,

                Plaintiffs,

v.

CITY OF NEW YORK, the NEW YORK CITY POLICE DEPARTMENT, and RAYMOND W. KELLY, as Commissioner of the New York City Police Department,

                Defendants.
------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

07 CIV 10359 (__)(__)

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK  )

JOHN F. DRISCOLL, being duly sworn, deposes and says:

1. I am the President of the Captains Endowment Association, Inc. ("CEA"), a municipal employee organization and the exclusive, recognized bargaining representative for more than 700 high ranking uniformed individuals employed by the New York City Police Department ("Department"). The specific ranks of the individuals represented by the CEA are Captain, Deputy Inspector, Inspector, Deputy Chief, and Police Surgeon. I am also one of the plaintiffs in this action and submit this affidavit in support of the motion seeking a preliminary injunction against defendants for the continued implementation and enforcement of the Department's September 30, 2007, Interim Order No. 52. A copy of Interim Order No. 52 that is the subject of the instant action is attached to the Complaint as Exhibit No. 1.

2. I was sworn in as a police officer employed by the Department in June 1974, after which I was assigned to the 71st and 5th Precincts. I was briefly laid off beginning in July 1975 due to the City of New York's fiscal crisis, but was rehired in October 1978. During the three year hiatus, I attended and graduated from St. John's University School of Law, where I earned by Juris Doctor degree. I was admitted to the Bar of the State of New York in 1979. After I was rehired, I worked in several precincts and was also assigned as a law instructor for recruit classes in the Police Academy. After a short leave of absence, during which I worked at the Criminal Court for the Queens District Attorney's Office, I was again assigned to the Police Academy where I performed in-service training for detectives and wrote the Field Supervisor's Legal Guide.

3. In September 1984, I was promoted to Sergeant and was assigned to the 17th Precinct, Employee Management Division and Chief of Personnel. My responsibilities included acting as Staff Advocate and serving as legal advisor to the Chief of Personnel. In this position, I developed and wrote various orders that were implemented Department-wide.

4. Approximately five years later, in June 1989, I was promoted to lieutenant. I was assigned to the 69th Precinct, Employee Management Division, and served as Commanding Officer of Testing and Research.

5. In June 1992, I was promoted to Captain, a title I continue to hold through the date of this affidavit. Upon my promotion, I was assigned Executive Officer in the 63rd Precinct and Commanding Officer, Performance Analysis Section.

6. Throughout the nearly 30 years I have dedicated to the Department, I have been become intimately familiar with the day-to-day functions and responsibilities of the Department, as well as the duties performed by officers of the various ranks. I am well-versed in the patrol guide procedures and other relevant orders, having developed and written some myself during my tenure with the Department.

7. On September 30, 2007, by direction of Police Commissioner Raymond Kelly, the Department issued Interim Order No. 52 ("the Order") regarding "Alcohol Testing for Uniformed Members of the Service Involved in Firearms Discharges Resulting in Injury to or Death of a Person."

8. The Order mandates that any uniformed member of the Department who is involved in a shooting, whether on or off duty, must be tested for alcohol.

9. According to the Order, CEA unit members are responsible for conducting the tests set forth in the Order.

10. CEA members who are involved in a shooting, whether on or off duty, are also subject to the procedures described in the Order and must be tested for alcohol.

11. The alcohol testing set forth in the Order is required to be performed even in the absence of "reasonable suspicion."

12. The training I received on the job, my 30 years of service as a sworn member of the Department, as well as my law school education have consistently defined "reasonable suspicion" as the standard by which one is to determine that a person has been, is, or is about to be engaged in criminal activity. That suspicion must be based on specific and articulable facts and inferences.

13. The Order requires that uniformed members of the Department be alcohol tested even where no specific and articulable facts and inferences exist to suggest the subject officer(s) had been drinking.

14. The procedures outlined in the Order also requires that Internal Affairs be involved and that any Intoxilyzer test be videotaped "for evidentiary purposes."

15. The subject officer(s) is required to submit to the test under threat of termination or other discipline.

16. No procedures exist whereby the officer(s) may challenge any false positive.

17. The Order permits that alcohol testing through the use of a portable breathalyzer test be conducted in a "Department auto being used by the supervisor concerned," in full view of those at or watching the scene.

18. Since the Order has been enforced, several uniformed members of the Department have been required to submit the alcohol testing. The results of their tests have been published in the media, raising additional concerns about the steps being utilized by the Department to secure personal information and protect the privacy interests of the subject members.

19. The stated purpose of the Order is "[t]o ensure the highest levels of integrity at the scene of police involved firearms discharges which result in injury to or death of a person, on or off duty, within New York City."

20. The numerous Patrol Guide Procedures ("PGP") in place prior to the issuance of the Order fulfill the stated purpose of the Order in ways that are less intrusive, provide due process, and protect the privacy interests of the members. These PGPs are as, if not more, effective in meeting the objectives sought by Department.

4

21. PGP No. 203-04, regarding "Fitness for Duty," mandates that uniformed members of the Department must not consume intoxicants to the extent that members become unfit for duty. It provides that any misconduct due to excessive consumption of, and intoxication from, alcohol will result in termination and that any such misconduct by an officer while armed with a firearm will result in charges of being unfit for duty.

22. PGP No. 203-06, regarding "Performance On Duty - Prohibited Conduct," specifically address the consumption of intoxication, whether on or off duty, while in uniform.

23. PGP No. 204-08, regarding "Firearms - General Regulations," and PGP No. 206-12, regarding "Removal of Firearms from Intoxicated Uniformed Members of the Service," spell out the rules to be followed and procedures utilized to determine if a uniformed member, on or off duty, is unfit for duty due to intoxication.

24. The Order, which resulted from a recommendation of a special panel created by the Police Commissioner in the wake of a shooting last year, appears to be an attempt to assuage activists who have raised concerns over undercover officers who may have consumed alcohol.

25. The Order has resulted in unreasonably intrusive, suspicion-less testing of officers in a shooting and what seemingly is gratuitous humiliation of those officers in a manner that pre-judges their involvement at the scene, denies them due process protections, and that fails to protect their rights to privacy.

26. The PGPs in place prior to the issuance of the Order successfully meet the aims sought in a manner that does not infringe upon the constitutional rights of the subject officer(s).

27. As outlined in the Complaint and discussed more fully in the Memorandum of Law, the implementation and enforcement of the Order violates the constitutionally protected rights of subject officers to be free from unreasonable searches and seizures, due process, and privacy.

28. Once an officer is required to submit to the alcohol testing procedures as set forth in the Order, no amount of compensation can reverse that taking of constitutional rights afforded him/her.

29. It is certainly my hope that crime can be addressed without the need to use firearms. However, when firearms are necessary to prevent or fight crime, CEA members are now being forced to either submit to or conduct the alcohol testing set forth in the Order.

WHEREFORE, for the aforementioned reasons and those set forth throughout the Complaint and Memorandum of Law, I respectfully but strongly urge this Court to enjoin and prevent defendants, during the pendency of this action, from the further implementation and enforcement of the Order, and to award such other and further relief as the Court may deem just and proper.

_____
John F. Driscoll

Sworn to before me this
14th day of November, 2007

_____
Notary Public

HARRY GREENBERG
Notary Public, State of New York
No. 492008
Qualified in Nassau County
Commission Expires January 25, 20 10

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN F. DRISCOLL, as President of the Captains
Endowment Association, Inc., and the CAPTAINS
ENDOWMENT ASSOCIATION, INC.,

                              Plaintiffs,

    v.

CITY OF NEW YORK, the NEW YORK CITY
POLICE DEPARTMENT, and RAYMOND W.
KELLY, as Commissioner of the New York City
Police Department,

                              Defendants.

---

**AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

---

GREENBERG BURZICHELLI GREENBERG P.C.
**Attorneys for Plaintiffs**
**Office and Post Office Address**
3000 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
Telephone (516) 570-4343