UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOHN F. DRISCOLL, as President of the Captains
Endowment Association, Inc., and the CAPTAINS
ENDOWMENT ASSOCIATION, INC.,

                                    Plaintiffs,

              v.

CITY OF NEW YORK, the NEW YORK CITY                    07 ___ CIV 10359 (___)(___)
POLICE DEPARTMENT, and RAYMOND W.
KELLY, as Commissioner of the New York City
Police Department,

                                    Defendants.

-----------------------------------------------------------------X


         MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
              MOTION FOR PRELIMINARY INJUNCTION




                         GREENBERG BURZICHELLI GREENBERG P.C.
                         Attorneys for Plaintiffs
                         3000 Marcus Avenue, Suite 1W7
                         Lake Success, New York 11042
                         (516) 570-4343

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. i

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ................................................................. 2

ARGUMENT ............................................................................... 3

I.   IRREPARABLE HARM RESULTS FROM IMPLEMENTATION
     OF THE ORDER ...................................................................... 4

II.  LIKELIHOOD OF SUCCESS IN FAVOR OF PLAINTIFFS .......... 6

     A.   The Order Requires Unreasonable Search of Subject
          Officers ........................................................................ 6

          1.   No "special need" is served by the Order ............... 8

          2.   Assuming *arguendo* a "special need" exists, the
               testing set forth in the Order is unreasonable ......... 11

     B.   Implementation of the Order Violates Procedural and
          Substantive Due Process Rights ......................................... 12

          1.   Procedural due process ..................................... 12

          2.   Substantive due process .................................... 14

     C.   Officers' Rights to Privacy Infringed Upon By the Order ...... 15

          1.   Right to Privacy ............................................... 15

          2.   The Order and the Right to Privacy ..................... 17

CONCLUSION ............................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell v. Wolfish*, 441 U.S. 520 (1979) ................................................................ 11

*Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42 (2d Cir. 1983) ... 4

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................. 12

*Bross v. Turnage*, 889 F.2d 1256 (2d Cir. 1989) ............................................. 12

*Chandler v. Miller*, 520 U.S. 305 (1997) ............................................... 7, 8, 9

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ..................................... 14

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992) ................................... 3, 5, 6, 15

*Daniels v. Williams*, 474 U.S. 327 (1986) .......................................................... 14

*Filmtruck, Inc. v. Earls*, 635 F.Suppiii. 1158 (S.D.N.Y. 1986) ........................... 4

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ................................................. 16

*Indianapolis v. Edmond*, 531 U.S. 32 (2000) ..................................................... 7

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ...... 3

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) ................................................... 5

*Katz v. United States,* 389 U.S. 347 (1967) ...................................................... 16

*Kennedy v. City of New York*, 1994 U.S. Dist. LEXIS 7437 (S.D.N.Y. 1995) .... 12, 13

*Ker v. California*, 374 U.S. 23 (1963) ................................................................. 6

*Makas v. Miraglia*, 2007 U.S. Dist. LEXIS 4400 (2d Cir. 2007) ...................... 14

*Mitchell v. Cuomo*, 785 F.2d 804 (1984) ...................................................... 3, 5

*Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989) ............... 7, 8, 10, 17

*Olmstead v. United States,* 277 U.S. 438 (1928) ............................................. 15

*Resolution Trust Corp. v. Elman*, 949 F.2d 624 (2d Cir. 1991) ......................... 3

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ................ 4

*Roe v. Wade,* 410 U.S. 113 (1973) ...................................................... 16

*Shady v. Tyson*, 5 F.Supp. 2d 102 (2d Cir. 1998) .............................. 4

*Skinner v. Ry Labor Executives' Ass'n*, 489 U.S. 602 (1989) ............. *passim*

*Thornburgh v. Am. College of Obstetricians & Gynecologists, 276 U.S. 747*..... 16

*United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007) ....................... 7, 8

*U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ..... 17

*Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995) ................... 7, 10

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ........................ 4

*Whalen v. Roe*, 429 U.S. 589 (1977) ................................................. 17

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163 (2d Cir. 2001) ................... 3

## CONSTITUTIONAL PROVISIONS AND STATUTES

Constitution of the United States, Amendment 4 ................................. *passim*

Constitution of the United States, Amendment 5 ................................. 5, 12, 16

Constitution of the United States, Amendment 9 ................................. 16

Constitution of the United States, Amendment 14 ............................... *passim*

Constitution of the State of New York, Article I, Section 12 ................... 5

## TREATISE

*C. Wright & A. Miller, Federal Practice & Procedure* (1973) ............... 4

**PRELIMINARY STATEMENT**

Plaintiffs bring this action to prevent the actual and imminent violations of constitutional rights of certain high ranking officers employed by the New York City Police Department. The Police Department has issued and began enforcing Interim Order No. 52, an order which subjects all uniformed officers who are involved in a shooting that results in either death or injury, whether on duty or off duty, to alcohol testing. These tests are administered without a warrant and in the absence of individualized suspicion. Failure to take the test will lead to discipline or termination. The test may be conducted in public view and its results are not safeguarded to prevent publication by the media or use in a criminal prosecution. Additionally, other policies and procedures are already in place to more effectively, and less intrusively, fulfill the objectives sought by the Police Department.

The implementation and enforcement of the Interim Order constitutes irreparable harm which cannot be remedied by monetary compensation. The likelihood of success on the merits is a requirement equally met by the facts herein. The testing, and its accompanying procedures, constitutes an unlawful search in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and violation of Article I, Section 12 of the New York State Constitution. The Interim Order further impedes the procedural and due process requirements of the Fifth and Fourteenth Amendments. And the enforcement of the terms set forth in the Interim Order infringes upon the subject officers' right to privacy which is gleaned from the language contained throughout the Constitution.

1

Accordingly, Plaintiffs seek both declaratory and injunctive relief which prevents the further implementation of the Interim Order and declares the rights of Plaintiffs and Plaintiffs' members *viz-a-viz* unreasonable alcohol and drug testing.

## STATEMENT OF FACTS

Most of the facts relevant to the instant motion are not in dispute.  On September 30, 2007, the New York City Police Department ("Department") issued Interim Order No. 52 ("the Order") requiring that uniformed members who are involved in a shooting, whether on-duty or off-duty, resulting in injury or death to a person, must be tested for alcohol, initially through a portable breathalyzer test and then by an Intoxilyzer machine. (Compl. ¶ ¶ 16 and 17; Driscoll Aff. ¶ ¶ 7 and 8).  The test(s) are to be performed by or with the supervision of Internal Affairs Bureau personnel, may be conducted in view of the public if the situation so requires, are videotaped and can be used for "evidentiary purposes" against the subject officer.  (Compl. ¶ 17; Driscoll Aff. ¶ ¶ 9 and 10).  The tests are to be conducted without regard to suspicion and in the absence of a warrant. (Driscoll Aff. ¶ 11).  For a more fully detailed statement of facts relevant to the instant motion, the Court is respectfully referred to the Verified Complaint and the Affidavit of John F. Driscoll, both filed simultaneously with the instant motion.

**ARGUMENT**

It is well-settled that in order to succeed in a motion for a preliminary injunction, the moving party must establish: (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief. *See Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 172 (2d Cir. 2001); see also Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992); Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984); and Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).*

Each and every element of the foregoing standard has been met with respect to all of the claims alleged in the instant matter. As will be discussed more fully below, the constitutional rights of subject officers have been and likely will continue to be violated. These injuries are actual and imminent, and no monetary award can compensate for the harm caused. Specific to the underlying claims, the Order violates the officers' constitutionally protected, fundamental rights in three significant ways. First, the alcohol testing constitutes an unreasonable search. Second, the procedures employed in the administration of the alcohol test infringe upon the officers' due process rights. Finally, the Order inappropriately and unnecessarily impinges upon the officers' privacy rights inherent in and gleaned from the language of the Bill of Rights and the Fourteenth Amendment.

I.   **IRREPARABLE HARM RESULTS FROM IMPLEMENTATION OF THE ORDER**

A showing of irreparable harm is the single most important requirement in satisfying the standard for a preliminary injunction. *See Shady v. Tyson, 5 F.Supp. 2d 102, 106 (2d Cir. 1998); see also Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990); and Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2948, at 431 (1973).*

The harm produced by the implementation of the Order is neither remote nor speculative; rather, it is actual and imminent. Within weeks of the issuance and effectuation of the Order, four uniformed officers have been subjected to the alcohol testing. And any other time a uniformed officer is involved in a shooting, the Order will again show its ugly face. Thus, the harm at issue is not simply "likely" to occur, but "probably" will occur. Plaintiffs' members will be subject to the alcohol testing set forth in the Order and, as higher ranking officers, may be required to actually administer the test themselves.

Essential to a showing of irreparable harm is the unavailability or at least inadequacy of a money damages award. *See, e.g., Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)* ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"); *and Filmtruck, Inc. v. Earls, 635 F.Supp. 1158, 1165 (S.D.N.Y. 1986) (citing In Re Feit & Drexler, Inc., 760 F.2d 406 (2d Cir. 1985)).*

4

Irreparable harm here arises from the unreasonable searches of subject officers that will occur, the concurrent deprivation of such officers' due process rights, and the intrusive, humiliating, and demeaning administration of a test whose procedures fail to protect the officers' personal privacy rights. Without injunctive relief, the harm cannot be undone. The test will have occurred and its results publicized. Videotaping of the whole ordeal will have been preserved for evidentiary purposes without so much as giving the subject officer an opportunity to mount a challenge. The dignity of the individual against whom the unwarranted intrusion occurred can never be returned to him/her and no monetary compensation can fix it.

**Where an alleged deprivation of a constitutional right is involved, as is the case in the instant matter, a finding of irreparable harm is presumed and no further showing is necessary**. *See Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996)* (explaining the existence of "the presumption of irreparable injury that flows from a violation of a constitutional rights . . . [I]t is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm"); *see also Covino, 967 F.3d at 77; Mitchell v. Cuomo, 748 F.2d at 808.*

The Order violates three types of fundamental rights protected by the both the federal and New York State constitutions. First, it violates the right to be protected against unreasonable searches and seizures guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 12 of the New York State Constitution. Second, implementation of the Order deprives the subject officers of their due process rights guaranteed by the Fifth and Fourteenth

Amendments. Finally, the subject officers will have suffered a loss of and an intrusion to their right to privacy which is gleaned from the penumbra of rights established under the Bill of Rights and the Fourteenth Amendment. Hence, the irreparable harm component is quite easily satisfied.

## II.    LIKELIHOOD OF SUCCESS IN FAVOR OF PLAINTIFFS

The second requirement needed to be met for a preliminary injunction is either (a) a showing that there is either a likelihood of success on the merits or (b) sufficiently serious questions going to the merits with a balance of hardships that tip decidedly in favor of plaintiffs. This standard is met with respect to each of the three constitutional claims raised in the Complaint. For the purposes of simplicity and clarity in thought, each claim is addressed seriatim.

### A.    The Order Requires Unreasonable Search of Subject Officers

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures." This fundamental right is enforceable as against the states through the Fourteenth Amendment. *See Covino, 967 F.2d at 77; see also Ker v. California, 374 U.S. 23, 30 (1963).*

The Order mandates the alcohol testing of officers who have been involved in a shooting, whether on-duty or off-duty. The testing is initially conducted by a portable breathalyzer test and may also be conducted through the use of an Intoxilyzer machine. It is well-established that the administration of even a breathalyzer test  constitutes a

6

"search." *See Skinner v. Ry Labor Executives' Ass'n, 489 U.S. 602, 616 (1989)* (concluding that a breathalyzier test, "which generally requires the production of alveolar or 'deep lung' breath for chemical analysis implicates . . . concerns about bodily integrity and . . . should also be deemed a search"). Thus, the inquiry now becomes whether the search pursuant to the Order is reasonable.

To be reasonable, the search must be based on individualized suspicion of wrongdoing. *See Chandler v. Miller, 520 U.S. 305, 308, 313 (1997); see also Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 664 (1995); and Indianapolis v. Edmond, 531 U.S. 32, 37 (2000).* It is undisputed that the Order requires the administration of the test in every single instance a uniformed officer is involved in a shooting within New York City which results in injury to or death of a person. No warrant or individualized suspicion is needed. Even if the firearms discharge was considered necessary and reasonable under the circumstances, and even without indicia of intoxication, the tests are required to be performed on the subject officer. Thus, no suspicion of wrongdoing may be even alleged.

In absence of either a warrant or such individualized suspicion, however, a search may still be permissible in certain limited circumstances. *See Chandler, 520 U.S. at 308; see also Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 668 (1989).* To be constitutionally permissible, the test must meet two inquiries. First, the test must serve a special governmental need beyond the ordinary needs of normal law enforcement *See Skinner, 489 U.S. at 619; see also United States v. Amerson, 483 F.3d 73, 80 (2d Cir. 2007).* And second, the search must be "reasonable in light of that

7

special need" when the government's interests are weighed against the individual's privacy interests. *See Skinner, 489 U.S. at 634; see also Von Raab, 489 U.S. at 672, 677; and Amerson, 483 F.3d at 80.* The test set forth in the Order does not affirmatively answer those inquiries because no "special need" exists and even assuming one does, the Order is unreasonable; hence, it is constitutionally impermissible.

### 1.    No "special need" is served by the Order

The testing required by the Order serves no "special need," a phrase which court precedent has determined to be "concerns other than crime detection" or "beyond the normal need for law enforcement." *Chandler, 520 U.S. at 314; see also, Skinner, 489 U.S. at 619.* The alcohol testing set forth in the Order (a) is not tied to individualized suspicion of wrongdoing, (b) does not serve a substantial special need, and (c) the test itself is merely symbolic, a move by the Police Commissioner, the Department, and the City to assuage community activists.

In *Chandler*, the Supreme Court concluded "that the proferred special need for drug testing must be substantial - important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the *Fourth Amendment's* normal requirement of individualized suspicion." *520 U.S. at 318.* There, the Court held that a state law requiring candidates for designated state offices must submit to drug tests did not fit within the category of constitutionally permissible suspicionless searches under the Fourth Amendment. Among the various reasons it provided for its determination were that the statute plainly was not tied to individualized suspicion of wrongdoing, that although the testing method was relatively noninvasive (urinalysis), the

8

state had failed to show a special need which was substantial, and the Fourth

Amendment shielded society against state action which diminished personal privacy for

a symbol's sake.

Similar to *Chandler*, notably lacking in the instant matter is any indication of a

concrete danger that requires departure from the Fourth Amendment's main rule

against unreasonable searches.  There is no demonstrated problem of alcohol abuse.

**The stated purpose of the Order is "[t]o ensure the highest levels of
integrity at the scene of a police involved firearms discharge which results in
injury to or death of a person, on or off duty, within New York City."  There are
already policies and procedures in place to more effectively address the type of
situations targeted by the Order.  *See generally Compl. ¶ ¶ 19 and 20; Driscoll Aff.
¶ ¶ 20 - 23 and 26; and PGP Nos. 203-04 ("Fitness for Duty"), 204-08 ("Firearms -
General Regulations"), 206-12 ("Removal of Firearms from Intoxicated Uniformed
Members of the Service"), and 212-29 ("Firearms Discharges").*  The Order is
simply a symbolic gesture to the public.  It requires non-routine searches that are
highly intrusive, involuntary, and are not for crime detection or prevention
purposes.**

*Chandler* had overturned a conclusion by the Eleventh Circuit that although the

drug tests were suspicionless and warrantless searches, and although there was no

record of drug abuse by elected officials, "the people of Georgia place in the trust of

their elected officials . . . their liberty, their safety, their economic well-being, [and]

ultimate responsibility for law enforcement."  It, the Eleventh Circuit, therefore

9

concluded that tests could be conducted in office of private physician, making intrusion very minimal. Plus, the candidate would control release of results (i.e, forfeit opportunity to run for office if positive result).

In the instant matter, not only is there no record of alcohol abuse and no suspicion, but the tests are conducted by personnel from the Internal Affairs Bureau, may be done in public view, and the release of the results is completely at the whim of the Department, not the subject officer.

In reversing the Eleventh Circuit, the Supreme Court inferred that reliance on several of its earlier decisions was inapposite. Those decisions included *Vernonia, supra* (random drug testing of students who participate in interscholastic sports), *Von Raab, supra* (drug tests for U.S. Customs Service employees who seek transfer or promotion to certain positions), and *Skinner, supra* (drug and alcohol tests for railway employees involved in train accidents and for those who violate particular safety rules).

Respondents will probably rely most heavily on the *Von Raab* and *Skinner* decisions. However, the facts of those cases are are clearly distinguishable from those the Court must address in the instant matter. In *Von Raab*, the primary enforcement mission of U.S. Customs Service was drug interdiction and employees would have "access to vast sources of valuable contraband." *489 U.S. at 669.* Furthermore, Customs officers "had been the targets of bribery by drug smugglers on numerous occasions," and several had succumbed to the temptation. *Id.* As opposed to Customs employees, officers here are subject to relentless scrutiny. Their day-to-day conduct attracts attention notably beyond the norm in ordinary work environments. And there

10

are already policies in place to address many of the daily situations the officers are required to handle. In *Skinner*, the Court required drug and alcohol tests for railway employees involved in train accidents and for those who violate safety rules. Unlike in *Skinner*, there is no demonstrable alcohol abuse problem (and none is alleged), and the testing is not being conducted for either safety purposes or crime detection.

2.   **Assuming *arguendo* a "special need" exists, the testing set forth in the Order is unreasonable**

Even assuming that the Court determines a "special need" exists, the alcohol testing and its accompanying procedures set forth in the Order are unreasonable. As such, its enforcement and implementation must be prevent. In *Bell v. Wolfish, 441 U.S. 520, 559 (1979)*, the Court explained: "The test of reasonableness under the *Fourth Amendment* is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

There are already policies and procedures in place which dictate how alcohol abuse, intoxication and firearms discharge situations are to be handled. The invasion of the personal rights that the test entails outweighs any particular need for the testing. **If there is suspicion of alcohol abuse or intoxication, the Department may test under the various other policies and procedures already in place.** *See Compl. ¶ 18; see also Driscoll Aff. ¶ ¶ 20 - 23 and 26.* Just like in *Chandler*, the need revealed

11

here is symbolic. The intrusive nature of the test is unreasonable, both in the manner by which it is conducted and the failure to provide adequate safeguards for test results.

Accordingly, the Order constitutes an unreasonable search in violation of the federal and state constitutions.

## B.    Implementation of the Order Violates Procedural and Substantive Due Process Rights

The Fifth and Fourteenth Amendments protect against loss of liberty and property without due process of law. The manner in which the alcohol test is administered and any subsequent discipline that may result, are constitutional violations. Specifically, the terms of the Order violate both procedural and substantive due process rights.

### 1.    Procedural due process

To establish a procedural due process violation, "plaintiff must show he possessed a protected life, liberty or property interest, he was deprived of that interest, and the deprivation occurred without adequate notice and an opportunity to be heard." *Kennedy v. City of New York, 1995 U.S. Dist. LEXIS 7437 at 15. (SDNY 1995); see Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); and Bross v. Turnage, 889 F.2d 1256, 1257 (2d Cir. 1989), cert. denied, 495 U.S. 956 (1990).* Subject officers have property interests in their positions as public employees and a liberty interest in their good name, reputation and honor. *See Kennedy, supra at 15.* In *Kennedy*, the Court concluded that even suspension without pay constitutes a deprivation under the law and that "a post-deprivation hearing is insufficient." *Id. at 16.* It explained:

12

"Normally, process is due before the initial deprivation, except in limited circumstances where there is **'an important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted'** [citation omitted]" [emphasis added]. *Id. at 17.* In *Kennedy*, the Court concluded that the Department had a compelling interest in ensuring its armed police officers are not impaired by alcohol or drugs and that prompt suspension may be necessary, but it also found that a jury could find that there was "no reasonable belief that the officer used drugs or that the suspension was justified." *Id. at 18.* Hence, it concluded that a post-deprivation hearing does not satisfy the requirements of due process and denied defendant's motion to dismiss the complaint.

Here, the Order permits that the alcohol testing be done by or under the supervision of Internal Affairs Bureau personnel. It permits the testing to be done in the public view (i.e., supervisor's car at the scene). Multiple testing may be done. Failure to comply with any order by a supervisor in the administration of the test(s) will most certainly lead to discipline and/or termination. The test results have been and will probably continue to be publicized and may be used for criminal prosecution. If a subject officer tests indicate a blood alcohol content of 0.08 or higher, he will probably be suspended without pay. He is offered no opportunity to challenge a false positive. The media and community activists will rush to judgment, impugning his good reputation and name without a finding of fact. In total, the Order does not provide "substantial assurance" that the testing was not baseless and that subjecting the officer to the type of scrutiny he will no doubt experience is warranted.

13

## 2.    Substantive due process

The substantive component of the due process clause bars certain government decisions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams, 474 U.S. 327, 331 (1986)*. The due process clause is "intended to secure the individual from the arbitrary exercise of the powers of government," serving "to prevent governmental power from being used for purposes of oppression." *Daniels, 474 U.S. at 331 (internal citations omitted)*. To constitute a violation of substantive due process, the conduct must violate the "decencies of civilized conduct." *County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); see also Makas v. Miraglia, 2007 U.S. Dist. LEXIS 4400, * 27 (2d Cir. 2007)*.

The alcohol testing set forth in the Order is not commonplace. It is intrusive and suspicionless testing of subject officers whose purposes are neither crime prevention nor crime detection. No public safety reason exists which justify the tests. **Additionally, other Department policies and procedures are available to test officers for alcohol and drug use and abuse.** And other policies and procedures address firearms discharges. The alcohol testing set forth in the Order is solely a public display. When a public display intrudes unnecessarily on the rights of the officers to be afforded due process, as it does here, it is outrageous and shocks the conscience.

Hence, the Order must be found to violate the subject officers' procedural and substantive due process rights. Additionally, as will be discussed more fully below, the Order violates the subject officers' right to privacy, which some justices have identified as emanating from the Fourteenth Amendment's due process clause.

14

**C.    Officers' Rights to Privacy Infringed Upon By the Order**

The Order violates the subject officers' constitutional right to privacy.  In *Covino*,

*supra*, the Second Circuit explained its approach in determining whether an individual's

right to privacy has been infringed upon:

> Our method of inquiry is first to determine whether [plaintiff] has exhibited
> a subjective expectation of privacy and whether society is prepared to
> recognize that expectation of privacy as reasonable [citations omitted].  If
> so, we proceed to a second inquiry in which we identify the interests
> asserted by the state actors for the searches and assess whether, in this
> particular context, these asserted interests, when balanced against the
> [plaintiff's] privacy expectations, sufficiently promote legitimate
> governmental interests in the absence of a warrant or some level of
> individualized suspicion justifying the search [citations omitted].

*967 F.2d at 77.*

The record indicates that plaintiffs and plaintiffs' members exhibit an actual,

subjective expectation of bodily privacy and, thus, demonstrate an interest in retaining

this limited right.  And there should be little doubt that society is prepared to recognize

as reasonable the retention of this right, barring reasonable suspicion or a warrant.  The

balancing of interests is the same as those described earlier and throughout this

memorandum of law.  However, a brief summary of the right to privacy and its progeny

is useful in understanding the specific constitutional provisions at issue in the current

matter.

**1.    <u>Right to Privacy</u>**

Nearly 80 years ago, Justice Louis Brandeis argued for a general constitutional

right to privacy in his now famous dissent in *Olmstead v. United States, 277 U.S. 438,*

15

*478 (1928)*: "The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness . . . . They conferred, as against the Government, the right to be left alone - the most comprehensive of rights and the right most valued by civilized men." Brandeis pointed to the Fourth Amendment's protections against unreasonable searches and seizures. He also cited the Fifth Amendment's guarantee against self-incrimination as another example.

Throughout the decades that followed, the Supreme Court has consistently recognized the right to privacy as a fundamental right protected by the Constitution. This was first recognized in *Griswold v. Connecticut, 381 U.S. 479 (1965)*, wherein Justice Douglas found a general right of privacy which can be gleaned from the words throughout the Bill of Rights. He argued the existence of a "zone of privacy." In *Griswold*, some justices even pointed to specific constitutional provisions like the Ninth Amendment (Justice Goldberg) and the Fourteenth Amendment's due process clause (Justices Harlan). Later, the Court emphasized the right to privacy inherent in the Fourth and Fifth Amendments (*Katz v. United States, 389 U.S. 347 (*1967)) (finding right to privacy protected individuals against electronic surveillance and wiretapping by government agents). In *Roe v. Wade, 410 U.S. 113 (1973)*, the Court ruled that the right to privacy included a woman's choice to have an abortion during the first trimester of pregnancy. There, the Court observed "a right of personal privacy, or a guarantee of certain areas or zones of privacy," protected by the Constitution. This reasoning was upheld in *Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 772 (1986)*, wherein Justice Harry A. Blackmun wrote, "Our cases long have

16

recognized that the Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government."

While *Skinner* and *Von Raab* have set limits on the right to privacy, the Court has, nevertheless, continued to recognize the basic, fundamental right to privacy that is deeply rooted in our society.

### 2.    The Order and the right to privacy

The Order does **not** require that the test results be kept confidential and no safeguards are currently in place to prevent the results from being released to the public. The test results, by all accounts, may be turned over to a law enforcement authority for criminal prosecution as it is the one administering the test itself.  The test results may lead to the imposition of discipline and other consequences.  No procedures are currently in place that consider a second test based on an alleged false positive.

The Fourteenth Amendment and other provisions of the Bill of Rights give rise to a right to personal privacy which incorporates an individual's "interest in avoiding disclosure of [certain] personal matters."  *Whalen v. Roe, 429 U.S. 589, 599 (1977).* The Order fails to safeguard disclosure of certain personal matters.  It simply seeks to allay the concerns of community activists.  As the Supreme Court has framed the right, "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989).*  The Order fails to provide officers the right to control the dissemination and use of personal information.

17

In light of the foregoing authority establishing that individuals are entitled to a right to privacy, the Order is clearly unreasonable. Privacy injuries are unique. The primary damage in "right to privacy" cases is mental distress. **Privacy injuries involve fundamental interests, albeit intangible, that are not usually susceptible to more traditional methods of economic quantification.** Thus, injunctive relief is the best vehicle to prevent such harm.

18

## CONCLUSION

Wherefore, for the reasons set forth herein, as well as those described in the

Verified Complaint and set forth in the Affidavit of John Driscoll, Plaintiffs' application for

a preliminary injunction should be granted.

Dated:     November   , 2007
           Lake Success, New York

Respectfully submitted,

Greenberg Burzichelli Greenberg P.C.

By: Harry Greenberg, Esq. (HG4178)
    Robert J. Burzichelli, Esq. (RB2004)
    Seth H. Greenberg, Esq. (SG4930)

Attorneys for Petitioner
3000 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
(516) 570-4343

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN F. DRISCOLL, as President of the Captains
Endowment Association, Inc., and the CAPTAINS
ENDOWMENT ASSOCIATION, INC.,

                              Plaintiffs,

              v.

CITY OF NEW YORK, the NEW YORK CITY
POLICE DEPARTMENT, and RAYMOND W.
KELLY, as Commissioner of the New York City
Police Department,

                              Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GREENBERG BURZICHELLI GREENBERG P.C.
**Attorneys for Plaintiffs**
**Office and Post Office Address**
3000 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
Telephone (516) 570-4343