```
07 CIV. 10359 (GBD)(MHD)

ECF
```

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Roy T. Richter, as President of the Captains
Endowment Association, Inc., and the Captains
Endowment Association, Inc.

                              Plaintiffs,

       -against-

CITY OF NEW YORK, the NEW YORK CITY POLICE
DEPARTMENT, and RAYMOND W. KELLY, as
Commissioner of the New York City Police
Department,

                              Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF**

---

## SEELIG & UNGARO
Attorneys at Law, LLP
Suite 1220, 299 Broadway
New York, NY 10007
(212) 766-5500

Robert A. Ungaro (RU4267)
Philip H. Seelig

## TABLE OF CONTENTS

                                                                                                             **Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ................................................................................................................................ 4

    DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT SHOULD BE DENIED AND PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGEMENT, A PRELIMINARY AND PERMANENT INJUNCTION

    a.    Irreparable Harm..................................................................................................4

    b.    Likelihood of Success on the Merits.....................................................................4

        1.    Alcohol Testing under IO 52 Is Event Triggered and Not Based Upon Suspicion.  As Part of a Criminal Investigation, it Is *Per Se* Unreasonable.................................................................................................... 5

        2.    In the Event This Court Wishes to Explore IO 52 under the "Special Needs" Exception, The Balance Between Governmental Interest And Private Intrusion Does Not Pass Muster Under The Fourth Amendment...............................................................................................7

            I.    The private intrusion is substantial................................................. 8

            II.    No Justification................................................................................ 8

            III.    Effective Alternative Provisions Exist under Current Policies for Alcohol Testing Which Pass Constitutional Scrutiny and Obviate the Stated Special Need or Justification for IO 52............. 9

    c.    Von Raab & Skinner...............................................................................11

    d.    The Complaint Should Not Be Dismissed and Defendants' Motion for Summary Judgment in Their Favor Denied ..........................................................15

CONCLUSION ........................................................................................................................ 17

**PRELIMINARY STATEMENT**

Plaintiffs submit this reply to defendant's opposition to plaintiffs' motion for a declaratory judgement and injunctive relief and in opposition to defendant's application for a dismissal of the complaint or summary judgment in favor of the defendants.

As this Court is aware, NYPD Interim Order 52 ("IO 52") issued September 30, 2007, is also being challenged in two other cases before this Court.[1] In the interest of brevity, plaintiffs do not wish to take this Court's time in restating the arguments raised against IO 52 in those actions.

The complaint herein seeks a declaratory judgement and injunctive relief pursuant to 28 USC § 2201 and 2202. Plaintiffs challenge the testing and procedures called for within Interim IO 52 which subject NYC police officers[2] to suspicionless and warrantless searches; for, *inter alia*, imminent violations of the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution; and violation of Article I, Section 12 of the New York State Constitution. As well, the

---

[1] The first action by the Detectives Endowment Association, the Sergeants' Benevolent Association and the Lieutenants Benevolent Association, ("DEA" "SBA" and "LBA") unions representing NYPD officers in the ranks of Detective, Sergeant, and Lieutenant in Palladino v. City of New York, 07 Civ. 9246 (GBD)(MGD); and the second action by the Patrolmen's Benevolent Association ("PBA") which represents members of the NYPD in the title of Police Officer in Lynch v. City of New York, 07 Civ. 9337 (GBD)(MGD). Defendants are the same in all three cases, the City of New York ("City"), the City's Police Department ("NYPD"), and the Police Commissioner. Defendants have requested that if the complaints in these three cases survive defendants' motions to dismiss, then all three cases be consolidated for all purposes. We have no objection.

[2] All uniformed ranks of Police Officers are vested with police powers, carry weapons, may be called upon to use their weapons on or off duty. Regardless of rank, police officers are subject to the provisions of the Police Patrol Guide and interim orders (as IO 52). While the plaintiffs herein belong to the ranks of Police Captain and above, any reference to "police officer" is meant to specifically include the rank of Captain, Deputy Inspector, Inspector, and Deputy Chief. Furthermore, in effecting the provisions of IO 52, plaintiffs are called upon to participate in and enforce an illegal search.

complaint alleges infringement of the procedural and due process requirements of the Fifth and Fourteenth amendments and upon the rights of privacy which are embodied throughout the Constitution.  As an unconstitutional intrusion, the implementation of which will cause *per se* irreparable harm, a preliminary and permanent injunction enjoining the implementation of IO 52 should be issued.  In the alternative, the defendant's application for a dismissal of the complaint or summary judgment in favor of the defendants should be denied.

The mandatory alcohol test or suspicionless search called for by "IO 52" cannot withstand Court scrutiny in that a search ordinarily, must be based on individualized suspicion of wrongdoing. U.S.C.A. Const.Amend. 4.   There exist limited exceptions to suspicionless searches in a non criminal context, however such exceptions do not properly lie herein.  Because alcohol testing under IO 52 is conducted pursuant to, and concomitant with, a criminal investigation, it does not fall within the limited "Special Needs" exception to the fourth amendment.  There exist multiple, feasible and well established protocols within the NYPD for suspicion based searches as well as ubiquitous random or non-criminal administrative testing of police officers.  Existing testing protocols  fulfill any legitimate need of the defendants and do so without violating the constitutional rights of the plaintiffs herein.

For these reasons, and those stated in Plaintiff's moving papers, this Court should enter an order preliminarily enjoining the implementation of IO 52 and denying the City's motion to dismiss or, in the alternative, for summary judgment in favor of the plaintiffs.

The facts relevant to the instant action are not controverted by the parties and provide a sufficient basis for the entry of an order enjoining the enforcement of alcohol testing under IO 52:

1. The alcohol testing called for in IO 52 is not attached to individualized suspicion, rather it is triggered as the result of a qualifying event: a police shooting, that occurs on or off duty, resulting in injury or death to a person.

2. Alcohol testing called for in IO 52 is part of a criminal investigation which occurs following a police shooting, which unlike typical accidents, can and do occur in the course of proper police action and where there is no inference that any misconduct, criminality or negligence is afoot.

4. There is no evidence or history of any alcohol intoxication in police shootings and the empirical evidence shows, to the contrary, extremely low alcohol related misconduct within the department thus no need, much less a "special need," exists.

5. There are many alternative provisions under existing policies directed towards deterring substance abuse, or for impairment testing in the NYPD. These include evidence-based suspicion testing; and administrative non-criminal testing which occurs during the application process, during probation, in connection with voluntary transfers, upon promotion, pursuant to negotiated settlements and during ever-present random dole tests conducted without specific notice. There are, as well, proactive and reactive voluntary and involuntary alcohol counseling programs. All of which serve the City's stated interests in deterring or discovering misconduct and promoting departmental integrity.

## ARGUMENT

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT SHOULD BE DENIED AND PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGEMENT, A PRELIMINARY AND PERMANENT INJUNCTION**

    **a.    Irreparable Harm**

If this Court agrees that the plaintiffs have shown that the Order here at issue subjects or will subject plaintiffs to unreasonable searches, due process violations or infringements upon privacy rights, than by virtue of the deprivation of plaintiff's constitutional rights, irreparable harm has occurred. It is well established that an infringement of a constitutional right is, in and of itself, irreparable harm. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." See *Mitchell v. Cuomo* 748 F.2d 804 C.A.N.Y.,1984 (2nd Cir). Quoting 11 C. *Wright & A. Miller*, Federal Practice and Procedure, § 2948, at 440 (1973), *Jolly v. Coughlin*, 76 F.3d 468, 482 (2nd Cir. 1996). See *Ambrose v. Malcolm*, 414 F.Supp. 485, 493 (S.D.N.Y.1976) (eighth amendment); *Lollis v. New York State Department of Social Services*, 322 F.Supp. 473, 483 (S.D.N.Y.1970) (eighth amendment). See also *Chandler v. Miller*, 520 U.S. 305, 322 (1997). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).

    **b.    Likelihood of Success on the Merits**

For the reasons set forth more fully below, we believe defendants can not and have not refuted that the plaintiff's case is likely to succeed on its merits and that there exist sufficiently serious questions going to the merits of this case with a balance of hardship tipping decidedly in favor of the plaintiffs.

    **1.**    **Alcohol Testing under IO 52 Is Event Triggered and Not Based Upon Suspicion. As Part of a Criminal Investigation, it Is *Per se* Unreasonable**

The parties agree that alcohol testing called for in IO 52 is a search not attached to individualized suspicion, rather it is triggered as the result of a qualifying event: a police shooting, whether on or off duty, that results in injury or death to a person irrespective of any suspicion that criminality, misconduct or impairment exist. The foregoing notwithstanding, alcohol testing under IO 52 is not merely an administrative protocol, it is conducted concomitant to, and in furtherance of, a criminal investigation. The "NYPD goes to great lengths to investigate the discharge, treat the [shooting] scene as a crime scene to ensure prosecutions."[3] The Chief of the Internal Affairs Bureau, goes so far as to promote the criminal nature of IO 52 as an end in and of itself stating: "Any use of the results of the [IO 52] testing in criminal cases will be an added effect of the testing's primary purpose of ensuring that NYPD officers entrusted with the immense power of carrying and using a firearm do not misuse that authority."[4]

Because a search pursuant to IO 52 is conducted in the course of a criminal investigation it does not, as defendants suggest, fall within the "Special Needs" exception to the fourth amendment, and therefore may not be conducted without a showing of individualized suspicion.

Alcohol testing under IO 52, screens for a substance that is neither illegal nor in many instances against department regulations to consume. In the case of an off-duty officer, alcohol is not regulated in any manner other than the requirement to be fit for duty - a vague and undefined

---

[3] see Campisi Decl. At pg 10

[4] Id at pg 15

term that the City has connected to the operation of a motor vehicle.[5] Significantly, an officer who scores above the legal limit is essentially taken into custody, and transported to a testing location and subjected to an Intoxilyzer.[6] The detection of alcohol in an officer's system, no matter how justified the shooting, constitutes evidence for a criminal prosecution for criminal negligence or reckless endangerment.

To be reasonable under the Fourth Amendment, a search must be based on individualized suspicion of wrongdoing. *U.S.C.A. Const.Amend. 4*, or fall within a limited exception. As the Fourth Amendment's text makes clear, the concept of reasonableness is the "touchstone of the constitutionality of a governmental search." *Bd. of Educ. v. Earls*, 536 U.S. 822, 828, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002). We believe it relevant that the defendant does not take lightly it's duty to insure that a legitimate suspicion exists before it proceeds with a suspicion based impairment search. Before administering a drug-screen test, no less than two supervisors must personally observe and independently articulate reasonable suspicion before conferring with their superior. After so doing, they must seek ultimate approval from a NYPD Borough Commander or equal level police commander.[7] In contrast, the defendants' procedure to test for alcohol use in IO 52 imposes no such requirement, no suspicion, no observations, no confirmations, no supervisory review or approval. It is an unconstitutional criminal search *ab initio*, without regard to a balancing test of whether governmental interests outweigh the private intrusion.

---

[5] Incorporating a score of .08 on a Breathalyzer criminalizes the operation of a motor vehicle under the New York State Vehicle and Traffic Law. Under IO 52, If an officer scores greater than an .08, he or she will be secondarily tested by the Highway Unit consistent with the alcohol testing of civilians arrested for suspicion of DWI.

[6] See Campisi Decl. At pg 14

[7] Patrol Guide 205-30, Administration Of Drug Screening Tests For Cause.

2.  **In the Event This Court Wishes to Explore IO 52 under the "Special Needs" Exception, The Balance Between Governmental Interest And Private Intrusion Does Not Pass Muster Under The Fourth Amendment**

"Only in those **exceptional circumstances** in which special needs, beyond the need for normal law enforcement, make the warrant and probable-cause requirement impracticable, is a court entitled to substitute its balancing of interests for that of the Framers." *New Jersey v. T.L. O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring) (emphasis added). Courts are particularly reluctant to recognize exceptions to the general rule of individualized suspicion where governmental authorities primarily pursue their general crime control ends." *City of Indianapolis* v. *Edmond*, 531 U.S. 32, 37 (2000). Only if "special needs" concerns other than crime detection are alleged in justification of Fourth Amendment intrusion, do courts undertake a context-specific inquiry, examining competing private and public interests advanced by parties. *U.S.C.A. Const.Amend. 4, Chandler v. Miller*, 520 U.S. 305, 322 (1997). See also *United States* v. *Lifshitz*, 369 F.3d 173, 185 (2d Cir. 2004). There is no "paramount government interest" associated with IO 52 nor is it "narrowly tailored and sufficiently effective" as the stated justification in *MacWade v. Kelly*, 460 F.3d 260, C.A.2 (N.Y.), 2006 (allowing the voluntary suspicionless searching of subway packages to thwart terrorism, a decision made in the wake of horrific subway bombings in Madrid, Moscow and London).

In a case involving non criminal administrative testing, *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) at 619, the Supreme Court addressed the special need exception to the 4th amendment "*When faced with special needs*, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context," *Amerson*, 483 F.3d at 79 n.6

(the special needs test is "more stringent" than the general balancing test; the balancing test is the second inquiry, if the government shows first that the search is justified by exceptional circumstances or special need beyond normal law enforcement).  To explore whether IO 52 falls under the "special need" category, there exist several competing considerations: (1) the weight and immediacy of the government interest; (2) the nature of the privacy interest allegedly compromised by the search; (3) the character of the intrusion imposed by the search; and (4) the efficacy of the search in advancing the government interest, *MacWade v. Kelly* 460 F.3d 260 C.A.2 (N.Y.), 2006.

IO 52 does not fall within exceptional circumstances or a so called "special need" but, even if a balancing of interests were appropriate, the balance tilts sharply in Plaintiffs' favor.

### I.     The Private Intrusion Is Substantial

Any intrusion upon a constitutional protection is a per se irreparable harm and is therefore substantial *vide supra* (Irreparable Harm).  Just because police officers are currently subject to permissible administrative searches and suspicion-based searches, does not justify a policy which violates constitutional protections. Furthermore, the intrusion occurs not only when the officer is acting while on duty and in the employ of the defendant, this intrusion extends to circumstances that occur while the officer is off-duty and faced with a dreaded call to use deadly force.

### II.    No Justification

The parties to this action all agree that there is no evidence or history of any alcohol intoxication in a police shooting [8] and thus there is no need, much less exceptional circumstance or special need.  The departmental alcohol-related statistics cited by the defendant do not justify a

---

[8] Nor has any test administered pursuant to IO 52 indicated the presence of alcohol following a shooting.  The presence of alcohol has been seen in some suicides.  It would defy logic to suggest post-shooting testing would affect suicides by despondent officers.

-8-

constitutional intrusion, to the contrary they accomplish the opposite,[9] showing that the defendant's aggressive detection protocols, screening and counseling programs are effective in stemming the conduct which the defendant claims IO 52 is necessary to prevent. The City claims the implementation of IO 52 will facilitate integrity and effect a deterrent.[10] Ends, which simply cannot justify suspending the principle that "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Edmond*, 531 U.S. at 37. Nor is there any real and present risk to the public following a police shooting. "Where... public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged," *Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, at 323.

> **III. Effective Alternative Provisions Exist under Current Policies for Alcohol Testing Which Pass Constitutional Scrutiny and Obviate the Stated Special Need or Justification for IO 52.**

The City acknowledges that police officers are already subject to a "variety of restrictions"and "[d]rug testing is a constant companion for the NYPD officer." A pretext that testing under IO 52 "represents a minimal invasion of the already limited privacy rights of officers." Their argument suggests that because there exist a multitude of other drug testing/screening and orders directed at preventing alcohol abuse and the intoxication of the plaintiffs, the implementation of IO 52 is merely a logical progression or minor rule change, of little import. The opposite is true. There are effective alternative provisions under existing policies for alcohol testing that are based upon the observations of investigating officers, or have adequate safeguards when testing for illegal

---

[9] 0.1% of the police force, while off-duty, has been charged with DWI, 0.01% of the police force has committed suicide with a suggestion of alcohol involvement. These statistics show how little, not how much, IO 52 is needed.

[10] see Campisi Decl.

narcotic usage, which are feasible and accomplish the goals of the defendant in a manner that passes constitutional review.

Defendants acknowledge that the patrol guide provides for extensive suspicion testing and administrative non-criminal testing: **Suspicion based testing.** If there is suspicion of impairment or any other reason an officer appears unfit for duty that officer must, upon order and threat of termination,[11] submit to testing, the removal of his or her firearm and placement to a restricted category. Thus, if following a shooting (as in any other time), an officer appears to be intoxicated or otherwise unfit for duty, that officer may be tested.[12] The parties all acknowledge that Police officers are subject to relentless scrutiny and, following a shooting, this scrutiny is at its apex when numerous departmental divisions as well as outside agencies converge. Because this suspicion-based test is conducted on pre-existing protocols requiring clearly articulated suspicion and supervisory review, it's criminal implications are not constitutionally at issue.[13] **Suspicionless Testing.** The second testing methodology utilized by the defendant is varied administrative non-criminal suspicionless tests which occur under the following protocols. (a) *Applicant testing,* which occurs during the application process; (b) *probationary testing,* during an officer's (currently 18 month) probationary period; (c) *Disciplinary testing,* pursuant to negotiated settlements; (d) *transfer testing,* which occurs upon voluntary transfer to special commands; (e) *Promotion testing,* which

---

[11] Or, as the case here, potential criminal prosecution.

[12] See Patrol Guide 203-04, Fitness for Duty.

[13] We believe it relevant that the results of suspicion-based drug tests do not require reporting to prosecutors, nor are the subjects under threat of criminal arrest. Police officer who are found positive for illegal narcotics are terminated, not arrested.

occurs when an officer is promoted in rank; and; (f) *random dole tests,* department-wide urine testing which is conducted, at random, with general but not specific notice.

Furthermore, the department has an aggressive proactive and reactive voluntary and involuntary alcohol counseling program to insure officers who believe themselves or who are suspected by others to receive treatment and assistance.[14]

Ubiquitous administrative drug testing, suspicion based drug testing, orders governing fitness and alcohol counseling programs clearly serve the defendant's needs in deterring, and discovering impairment and promoting the functional integrity of the officers.

Suspicionless tests are not, as the defendants assert, necessary to deter alcohol misconduct or to promote integrity, they are a knee-jerk response to the media coverage. There was rumor that one of the officers who participated in the highly publicized Bell shooting had consumed alcohol. There was no suggestion that any investigators or supervisors witnessed any evidence of impairment, or that the officer's actions were affected by alcohol. Meager justification indeed.

The administrative deference normally granted to the police commissioner is inapplicable when criminal jeopardy applies. Constitutionally allowable administrative testing or suspicion based testing do not weigh in the defendant's favor when there is no problem, no history nor even a single event which showed the need for dispensing with constitutional rights called for in suspicion searches, as it does in IO 52 searches.

### c. Von Raab & Skinner

We believe it provident to revisit two Supreme Court cases in which special needs were found and review why these cases are easily distinguished from the case at Bar. *National Treasury*

---

[14] see Gimblet Decl.

*Employees Union v. Von Raab*, 489 U.S. 656, 659, 109 S.Ct. 1384, 1387, 103 L.Ed.2d 685 (Similar in that it involved the drug testing of law enforcement officers), and *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 608-613, 109 S.Ct (Similar in that it implemented an event based testing trigger - a train accident). The Supreme Court in both cases accepted (as herein) that the tests were searches, but reasoned that under significantly restricted conditions (unlike here), alcohol and drug-testing programs in *Skinner* and *Von Raab*, served "special needs," and involved "interests other than the ordinary needs of law enforcement."

*Von Raab*

It is of significant import that allowable drug testing of Customs Officers in *Von Raab,* occurred only within a limited administrative context. The Supreme Court's decision in *von Raab* is easily distinguished in that no criminal investigation was related to these testing modalities and suspicionless testing was limited to promotional candidates or transferees to one of the three categories of covered positions. Similar to well accepted procedures conducted in applicant testing, transferees to certain departmental assignments within the NYPD, and promotional candidates, the subjects in *von Raab* had notice that "drug tests were a requirement of those positions." 489 U.S. at 672 n.2. Customs officers knew of the testing in advance, giving constructive consent by virtue of their seeking said promotions or transfers, "which minimized the intrusion on privacy occasioned by the visit." 489 U.S. at 672 n.2; The Court specifically noted that Von Raab testing was limited to an administrative protocol and unconnected to a criminal investigation where a heightened need was involved:

> "The Customs Service program has been adopted solely for an administrative purpose. While the fourth amendment protects against invasions for civil as well as criminal investigatory purposes,[480 U.S. at ---- - ----, 107 S.Ct. at 1496-98 (plurality opinion); T.L.O.,

> 469 U.S. at 334, 105 S.Ct. at 740.]the need for protection against governmental intrusion diminishes if the investigation is neither designed to enforce criminal laws nor likely to be used to bring criminal charges against the person investigated. Thus, when the police undertake "routine administrative caretaking functions" like inventory searches, particularly when they are not a subterfuge for criminal investigations, "[t]he probable-cause approach" and its concomitant requirement of a warrant are "unhelpful." *Id* at 179.

The Supreme Court further addressed the basis for allowing administrative testing of Customs officers, in lieu of individualized suspicion, as it was "not feasible to subject [U.S. Customs law enforcement] employees and their work product to the kind of day-to-day scrutiny that is the norm in more traditional office environments." *Id*., at 674, 109 S.Ct., at 1395. In *Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, 323., the Supreme Court further discussed the limited exception for the administrative testing it allowed in *Von Raab,* given the lack of scrutiny that customs officers were subjected to. Unlike customs officers in Von Raab, police officers are subject to intense intra and inter agency scrutiny following a shooting where divergent operational divisions and outside agencies all come together creating an inherent microscopic review as well as checks and balances to insure no individual operational unit avoids or otherwise turns a blind eye towards evidence of impairment. If the City wishes to subject the officer to a search which will potentially provide evidence for later prosecution, the courts will allow it, albeit within reasonable 4th amendment limitations of suspicion.

*Skinner*

In *Skinner*, 489 U.S. 602, 619, 109 S.Ct. 1402 (1989) the Supreme Court, based upon empirical evidence that alcohol and drug abuse by railroad employees had caused or contributed to

a number of significant train accidents,[15] approved administrative suspicionless alcohol and drug-testing, in connection with "certain major train accidents or incidents."[16] The Court prefaced it's approval of the administrative testing of railroad employees in noting first that:

> "In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment. See United States v. Place, supra, 462 U.S., at 701, and n. 2, 103 S.Ct., at 2641 and n. 2; United States v. United States District Court, 407 U.S. 297, 315, 92 S.Ct. 2125, 2135-2136, 32 L.Ed.2d 752 (1972). Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. See, e.g., Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978), Id at 620.

The Supreme Court in *Skinner* further qualified its approval specifically articulating reservations and concerns with respect to administrative searches, pretextual or not, being used as a stalking horse for the collection of criminal evidence.

> "Absent a persuasive showing that the FRA's testing program is pretextual, we assess the FRA's scheme in light of its obvious administrative purpose. We leave for another day the question whether routine use in criminal prosecutions of evidence obtained pursuant to the administrative scheme would give rise to an inference of pretext, or otherwise impugn the administrative nature of the FRA's program." *Id* at 621

*Skinner* can be further distinguished in that the Supreme Court allowed administrative suspicionless testing in light of its clearly non-criminal nature and the discussed the fact that the

---

[15] There existed a record of persistent alcohol abuse, extensive on-duty intoxication and a large number of alcohol related accidents. *Id* at 606-7.

[16] The incidents involved violations of major safety rules. Police shootings, unlike major train accidents, can and do occur in the course of proper police action and where there is no inference that any misconduct, criminality or negligence is afoot

actual testing was being performed by civilian personnel with no criminal or investigative experience and the results were not shared with law enforcement officials *Ibid*. Testing under IO 52 is conducted by criminal investigators from the Internal Affairs Bureau who's primary mandate is criminal investigations of police misconduct.

> "The Government's need to rely on private railroads to set the testing process in motion also indicates that insistence on a warrant requirement would impede the achievement of the Government's objective. Railroad supervisors, like school officials, see New Jersey v. T.L.O., supra, 469 U.S., at 339-340, 105 S.Ct., at 742, and hospital administrators, see O'Connor v. Ortega, 480 U.S., at 722, 107 S.Ct., at 1500; are not in the business of investigating violations of the criminal laws or enforcing administrative codes, and otherwise have little occasion to become familiar with the intricacies of this Court's Fourth Amendment jurisprudence. "Imposing unwieldy warrant procedures ... upon supervisors*624 , who would otherwise have no reason to be familiar with such procedures, is simply unreasonable." *Ibid*.1417.

IO 52 is lacking both the legitimate need and administrative exception found in *Skinner* and the non-criminal nature and essential voluntariness in *von Raab,* and accordingly can be distinguished as a violative and pernicious constitutionally prohibited intrusion, unjustified and unnecessary . See also  Matter of Caruso v. Ward, 72 N.Y.2d 432, 439, 534 N.Y.S.2d 142, 530 N.E.2d 850 (1988), which specifically limited the intrusion to administrative random drug testing in NYPD's OCCB which like *Von Raab* was both with notice and upon voluntary transfer and like Skinner occurred under an administrative protocol .

### d.    The Complaint Should Not Be Dismissed, and Defendants' Motion for Summary Judgment in Their Favor Denied

The facts are not materially in dispute.  Contrary to the assertions of the defendants, these facts do not support a summary judgement determination in their favor, they provide sufficient basis for a declaratory judgement and for preliminary injunction or permanent injunction against them.

Furthermore, a dismissal of the complaint against plaintiffs would be premature, given their entitlement to discovery as to the purpose of IO 52 and the extent to which IO 52 serves the purposes and justifications for its constitutional intrusions.

Because defendants have implemented a policy which violates the United States Constitution and Article I, Section 12 of the New York State Constitution, it is imperative that the Court grant plaintiffs a preliminary injunction enjoining the implementation of IO 52 or in the alternative, deny summary judgment in favor of the defendants.

Defendants have elected to avoid the ramifications of the IO 52 constitutional intrusion in favor of a contrived, legally insufficient pretext with which to construct a justification or "special need" when no such need exists. Their reasoning is clearly conclusory, and appears motivated not by a genuine need to correct a documented problem, rather for motivations which appear to pander to ephemeral rumor or political hypersensitivity. Common sense and all the credible evidence support the conclusion that there exist feasible and meaningful yet constitutionally tempered protocols which serve the needs of the defendants and do so do in a manner which does not infringe upon the rights of the plaintiffs.

If constitutional spirit in these matters truly resembled defendants' interpretation of their role in the particular case at bar, intrusions upon constitutional rights would not be answerable to basic rules of logic and fairness. Authority to implement unconstitutional searches would thus be given license, rather than constrained by the rule of law.

## CONCLUSION

For the foregoing reasons, and those stated in our motion papers, Plaintiff's motion to enjoin the enforcement of IO 52 should be granted, and the City's motion to dismiss, or in the alternative for summary judgment, should be denied.

DATED:   New York, New York
         February 11, 2008

                                                 **SEELIG & UNGARO**
                                                 Attorneys at Law, LLP
                                               Suite 1220, 299 Broadway
                                                  New York, NY 10007
                                                      (212) 766-5500
                                                (212)766-2616 (Facsimile)

                                                 `By`:

                                                 `ECF`:       `/s/`

                                                 Robert A. Ungaro (RU4267)
                                                 Attorney for Plaintiff
                                                 Sufirm@aol.com

Co-counsel: Philip H. Seelig
On the Brief: Nicholas Cifuni

`H:\Docs\CEA\Breathalyzer File\Richter 07-cv-10359-GBD SUfile\CEAMotionInOpposition.Final`

# Certificate of Service

RE:   07 CIV. 10359 (GBD)

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

I hereby certify that on February 11, 2008, the foregoing:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF**

was filed in <u>Roy T. Richter, as President of the Captains Endowment Association, Inc. Et al v. the City of New York</u>, 07 CIV. 10359 (GBD), with the Clerk of the Court and served in accordance with the Federal Rules and/or the Southern District Rules on Electronic Service upon the following parties and participants:

```
MICHAEL A. CORDOZO, ESQ.,
Attorneys for Defendants
CORPORATION COUNSEL
OF THE CITY OF NEW YORK
(212) 788-0303
100 Church Street
New York, New York  10007
     Attn: Alan Maer Schlesinger

DATED:  New York, New York
        February 11, 2008
```

**SEELIG & UNGARO**
Attorneys at Law, LLP
Suite 1220, 299 Broadway
New York, NY 10007
(212) 766-5500

By:

ECF:        /s/
_____
Robert A. Ungaro (RU4267)

H:\Docs\CEA\Breathalyzer File\Richter 07-cv-10359-GBD SUfile\CEAMotionInOpposition.Final