07 Civ. 10359 (GBD)(MHD)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROY RICHTER, as President of the Captains Endowment Association, Inc., and the CAPTAINS ENDOWMENT ASSOCIATION, INC.,

                                              Plaintiffs,

-against-

CITY OF NEW YORK, the NEW YORK CITY POLICE DEPARTMENT, and RAYMOND W. KELLY, as Commissioner of the New York City Police Department,

                                              Defendants

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, NY 10007-2601
Tel: 212-788-0952

**ALAN M. SCHLESINGER,**
Of Counsel

Matter No.: 2007-037940

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

          THE COMPLAINT FAILS TO STATE A CLAIM
          AND MUST BE DISMISSED. .................................................................................. 3

          A.    Standing ........................................................................................................ 3

          B.    Failure To State A Claim ............................................................................. 3

CONCLUSION ........................................................................................................................ 10

# **PRELIMINARY STATEMENT**[1]

Plaintiffs bring this complaint challenging NYPD Interim Order 52 ("IO 52"), which requires that a breathalyzer test be administered to any NYPD officer who is involved in a shooting that results in injury or death to a person in the City of New York ("City"). Plaintiffs, the Captains Endowment Association ("CEA") and its president, contended in their complaint that IO 52 is unconstitutional because the breathalyzer is an unconstitutional search and violates the Due Process Clause. Plaintiffs move for a preliminary and permanent injunction prohibiting enforcement of IO 52. Defendants moved to dismiss or in the alternative for summary judgment, and opposed the motion for a preliminary injunction. Defendants argued primarily that IO 52 falls squarely within the "special needs" doctrine of the Fourth Amendment which permits searches to protect the public safety without individualized suspicion, if the search is not primarily for the purposes of a criminal investigation. Plaintiff opposed defendants' motion and defendants now reply.

Plaintiffs correctly note that there is always a possibility that the results of the breathalyzer might somehow be used in a criminal investigation but wrongly conclude that this possibility precludes invocation of the special needs doctrine. In <u>Skinner</u>, the Supreme Court noted that the drug tests in that case could be used in a criminal investigation and yet applied the special needs doctrine in upholding the suspicionless drug tests in that case. Thus, plaintiffs' conclusion that the special needs doctrine is inapplicable where there is any possibility that the information gathered from the search may be used in a criminal

---

[1] IO52 is challenged in two other cases: (1) by the unions representing NYPD officers in the ranks of Detective, Sergeant, and Lieutenant in <u>Palladino v. City of New York</u>, 07 Civ. 9246 (GBD)(MGD); and (2) by the Patrolmen's Benevolent Association, which represents NYPD Police Officers in <u>Lynch v. City of New York</u>, 07 Civ. 9337 (GBD)(MGD). Defendants have requested that if the complaints in these three cases survive defendants' motions they cases should be consolidated for all purposes. Plaintiffs here do not object to consolidation.

investigation must be rejected. It need only be added that plaintiffs do not allege that NYPD's interest in maintaining the integrity of such shootings is a pretext for a criminal investigation.

In applying the balancing test required by the special needs doctrine, the breathalyzer test represents a minimal intrusion on the already very limited privacy rights of officers. The Skinner Court described a combination of a breathalyzer and a urine test as minimally intrusive and the same must hold here where only a breathalyzer test is done and where NYPD officers have long been subject to random drug testing. 489 U.S. at 625-26.

On the other side of the scale the government's interests here are compelling. The NYPD has a long history of combating alcohol abuse among its members and has a significant number of regulations addressed to this problem. Despite these repeated and significant efforts, NYPD officers have been arrested for driving while under the influence and there have been tragic suicides that bore indicia of being alcohol related. A shooting by an NYPD officer who is under the influence of alcohol would be a an abuse of the power and authority invested in the officer and a betrayal of the public trust. IO 52 maintains the integrity of shootings by deterring alcohol use and providing a better mechanism for detecting any breach by an officer involved in a shooting. Further, the information captured by the breathalyzer dissipates quickly and cannot be captured in any other way. Thus, in this instance the balancing of interests requires that IO 52 be upheld under the special needs doctrine. Thus, the motion to dismiss should be granted.

**STATEMENT OF FACTS**

For a more detailed statement of facts the Court is respectfully referred to the Declaration Charles V. Campisi, dated November 7, 2007, and the exhibits annexed thereto, and to the Declaration of Suzanne Gimblet, dated November 6, 2007, which are annexed to

the Declaration of Alan M. Schlesinger, dated December 7, 2007.

## ARGUMENT

### THE COMPLAINT FAILS TO STATE A CLAIM AND MUST BE DISMISSED.

**A.   Standing**

Defendants noted in their motion that plaintiffs were without standing to challenge IO 52 because there had not been a case in which a CEA member was required to submit to a breathalyzer test under IO 52. Plaintiffs have not contended otherwise. Plaintiffs claim that they will be required to enforce IO 52 but this does not constitute an "injury in fact." Nor have plaintiffs shown grounds for asserting "third-party" standing permitting them to litigate the rights of non-parties (other than the union's right to litigate the rights of its own members – associational standing – which defendants do not now challenge). See Warth v. Seldin, 422 U.S. 490, 499, 510 (1975)(discussing "third-party" standing). Thus, the instant complaint must be dismissed.

**B.   Failure To State A Claim**[2]

Plaintiffs primary, and erroneous, contention is that the purpose of IO 52 is routine collection of evidence in aid of a criminal investigation. See Plaintiffs' Memo at 3, ¶ "2." Yet in the very same breath plaintiffs' concede that IO52 applies "where there is no inference that any … criminality … is afoot." Id. and p. 5 (IO 52 applies "irrespective of any suspicion that criminality, misconduct or impairment exist."). Plaintiffs thus concede that IO 52 applies where there is no crime and the investigation of crime is not its primary purpose.

The primary purpose of IO 52 is to maintain the integrity of police shootings

---

[2] Plaintiffs do not seem to respond to that portion of defendants motion which sought dismissal of the Due Process Clause claims and have apparently abandoned those claims.

which injure or kill a person.  A shooting in which the officer is under the influence of alcohol is an abuse of power granted officers and a betrayal of the public trust.  IO 52 also deters on-duty alcohol use by NYPD officers who may be called upon to discharge a weapon they carry only because of their employment in the NYPD.  Here, as in <u>Skinner</u>, the government does not deny that the information might conceivably be used in a criminal case arising from a shooting but here, as in <u>Skinner</u>, this does not preclude application of the special needs doctrine.  See <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602, 620-21, and n. 5 (1989).

In <u>Skinner</u>, the results of a breathalyzer or drug test could have been used in a criminal prosecution and the Supreme Court held that the tests were nevertheless constitutional.  <u>Id.</u>  The same can be said for the special needs searches upheld in <u>Cassidy</u>, <u>MacWade</u>, and <u>Edwards</u>; in none of these case was there any assurance whatsoever that the results of the search would not be used in a subsequent criminal investigation.  <u>Cassidy v. Chertoff</u>, 471 F.3d 67, 74-75 (2d Cir. 2006); <u>MacWade v. Kelly</u>, 460 F.3d 260 (2d Cir. 2006); <u>United States v. Edwards</u>, 498 F.2d 496, 500-01 (2d Cir. 1974).  Indeed, as to <u>Cassidy</u>, <u>MacWade</u>, and <u>Edwards</u> there is no doubt, for example, that any illegal substances uncovered by the search would be used in a criminal case.  Yet the Second Circuit upheld the searches in all of those cases.

Plaintiffs cannot show that breathalyzers are routinely sought in criminal investigations of shootings; it is not a routine part of such investigations.  In contrast, a breathalyzer test under IO 52 is administered even where there is no criminal investigation.  Plaintiff's Memo at ??.  There was a case in which an officer discharging his weapon accidentally shot himself – a circumstance that virtually precludes a criminal case.  Campisi

- 4 -

Aff. ¶ 58.  Thus, the primary purpose of IO 52 is not the gathering of evidence for a criminal investigation but, rather, as set forth in IO 52 itself and also in the affidavit of Chief Campisi, the maintenance of the integrity of police shootings.  IO 52 is concerned with the NYPD's management of its officers as employees rather than as criminal suspects.

At its heart, plaintiffs' argument boils down to a claim that the NYPD may never search its own employees, as opposed to subway patrons or ferryboat riders, pursuant to the special needs doctrine because the NYPD is a criminal investigative agency and always has criminal investigative responsibilities.  NYPD officers, as plaintiffs themselves note, are trained to encounter situations in which it will be necessary to discharge their weapons.  Plaintiffs' Memo at 1 n.2.  The management of that discharge and the maintenance of the integrity of such shootings should permit the NYPD broader, not lesser, latitude in ensuring that officers are not under the influence of alcohol at the time of the shooting.  However, under plaintiffs' theory, the NYPD would not have the latitude that a non-criminal agency might have; even though, as in <u>Skinner</u> the non-criminal agency is permitted to use the results of the test in a criminal investigation.  It need only be added that in <u>Skinner</u> the Court noted that in the railroad industry "even a momentary lapse of attention can have disastrous consequences."  489 U.S. at 628.  The same must be said here of NYPD officers.

Plaintiffs fail to so much as mention the fact that if a breathalyzer test is not administered soon after the shooting, the information sought will be lost.  <u>Skinner</u>, 489 U.S. at 623.  Moreover, while plaintiffs argue that the past reasonable suspicion tests are still sufficient, they also note that a reasonable suspicion test requires, *inter alia*, that "two supervisors ,must personally observe and independently articulate suspicion before [the NYPD] proceeds with a suspicion based impairment search."  Plaintiffs' Memo at 6.  In

- 5 -

<u>Skinner</u>, the Supreme Court noted that prior to the institution of routine post-accident testing, the railroads relied on individualized suspicion testing and that this had been ineffective. 489 U.S. at 607-08. There as here, the employees argued that individualized suspicion did not impose any insurmountable burden. <u>Id.</u> at 613. As the <u>Skinner</u> Court noted there and is can be said here:

> … employees who are subject to testing under the FRA regulations can cause great human loss before any signs of impairment become noticeable to supervisors or others. An impaired employee, the FRA found, will seldom display any outward "signs detectable by the lay person or, in many cases, even the physician."

489 U.S. at 628 (quoting a Federal Railway Administration report). If a physician could not detect signs of impairment in an employee then it can be expected that a police supervisor might also find difficulty. As in <u>Skinner</u>, this fact standing alone is an end to plaintiffs' argument that reasonable suspicion testing is sufficient to meet the needs of the government.

Plaintiffs' also attempt to distinguish <u>Skinner</u> and <u>Von Raab</u> although they do not even bother to attempt to distinguish the Second Circuit cases permitting special needs searches of ordinary citizens who are in the public thoroughfares; entering into airplanes (<u>Edwards</u>), subways (<u>MacWade</u>), and ferries (<u>Cassidy</u>). In any event, their attempts to distinguish these two Supreme Court cases are distinctions without a difference.

Plaintiffs turn to <u>Von Raab</u> first contending that the Customs officers who were plaintiffs in <u>Von Raab</u> had impliedly consented to drug tests by seeking promotion. Certainly, the Customs officers did not believe that they consented or else they would not have prosecuted their claim that the drug tests were unconstitutional all the way to the United States Supreme Court. Nor did the Supreme Court conceive that the Customs officers had consented. Otherwise there would have been no point in discussing the special needs

doctrine because a competent person can consent to a search under the Fourth Amendment. Thus, instant plaintiffs' attempt to reduce Von Raab to some sort by this consent theory must be rejected.

Furthermore, the principle justification for permitting the suspicionless testing in Von Raab was the fact that they were applying for positions in which they were to carry guns. Von Raab, 489 U.S. at 671("We think Customs employees … who are required to carry firearms in the line of duty likewise have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test."). Here the triggering event is not the mere carrying of a weapon, or even the discharge of that weapon – it is the actual injury or death of a human being in a police shooting that triggers IO 52. Thus, there is more justification for the test at issue here than there was for the tests upheld in Von Raab.

Plaintiff's attempt to distinguish Skinner fares no better. Plaintiffs contend that the breathalyzer and drug test required in Skinner after every accident or major incident had no criminal investigation implications. Plaintiff make this argument even though the tests in Skinner could be used for a criminal case. Indeed, plaintiffs quote the passage of the opinion which states that the administrative purposes proffered by the government are to be taken at face value "[a]bsent a persuasive showing" that the administrative purposes are a pretext for the routine gathering of evidence for a criminal case. Plaintiffs' Memo. at 14 citing 489 U.S. at 621 n.5. Thus, Skinner envisages the use of the testing results in criminal cases, and approves the application of the special needs doctrine despite this use, unless there is a "persuasive showing" that the administrative purpose is a pretext.

There is no evidence in the instant case that the administrative purpose is a pretext – indeed, plaintiffs admit that the test under IO 52 is administered even though "there

is no inference that any misconduct, criminality or negligence …" has occurred.  Plaintiffs' Memo at 14 n.16.  IO 52's purpose is the maintenance of the integrity of police shootings by identifying officers who violate the public trust by discharging their weapons while under the influence of alcohol, deterring alcohol use by officers, and assuring the public that the extraordinary power invested in officers is not being abused.  As there is no evidence, let alone a "persuasive showing," that this is all pretext for criminal investigation the administrative reason must be accepted here as it was in Skinner.  It need only be added that plaintiffs do not cite a single instance in which the IO 52 breathalyzer test has been used as part of a criminal prosecution in the 5 months since the promulgation of the regulation.

It must be remembered that the triggering events in Skinner were an accident or major incident and the possible criminal implications of such events are obvious.  489 U.S. at 608.  The real possibility of criminal prosecutions in Skinner cannot be gainsaid anymore than it can be disputed that the results of breathalyzer or drug tests would be of enormous value to the prosecution of railway personnel.  Yet the Supreme Court approved the application of the special needs doctrine to the testing done in Skinner.

Plaintiffs also argue that there is no evidence of an alcohol problem here as there was in Skinner.  They base this on the absence of statistics on whether any officers were under the influence of alcohol during a shooting.  Of course, we all hope that there will never be an NYPD who is involved in a shooting while under the influence of alcohol.  However, the absence of statistics specific to shootings is not dispositive.  First, the NYPD has not routinely administered breathalyzers and IO 52 has been in place for only 5 months.  Thus, it is not surprising that there are no statistics.

- 8 -

Second, as noted above, there is ample evidence of alcohol abuse by some officers. Officers have been arrested for DUI and there have been suicides with indicia of alcohol abuse. The NYPD has numerous regulations concerning alcohol, including one describing the procedure of removing the firearm of an officer who is intoxicated. The NYPD has long maintained a Counseling Unit devoted to addressing alcohol problems of NYPD personnel. Moreover, during the years 2005 to the present about 380 NYPD personnel, equal to 1% of the police force, has been seen at the NYPD's Counseling Unit who had never been seen there before. Gimblet Decal. ¶ 9. The NYPD need not await a proven episode of an intoxicated officer causing injury to take steps to ensure that such a tragedy is prevents. IO 52 is not, as plaintiffs contend, mollification of the public, it is good management of the Police Department.

In sum, as the Supreme Court noted in Skinner,

> More importantly, the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety, a goal dependent, in substantial part, on the health and fitness of covered employees.

489 U.S. at 627. Here, there is perhaps no more "regulated industry" in civilian society than the NYPD. In Skinner, the employees were required to take periodic physicals while here the officers are subject to random testing. Id. Here, the minimal intrusion is simply a breathalyzer test which is less intrusive than the breathalyzer and drug tests considered and approved in Skinner. Here, as in Skinner, the minimal intrusion of the test is far outweighed by the compelling governmental interests.

The NYPD's compelling interests here include (1) monitoring NYPD officers who use the guns given them by the government to injure or kill a fellow human being; (2)

deterring alcohol use when an officer is armed or knows that he or she will be armed in the near future; and (3) assuring the public that NYPD officers are using their weapons in accordance with the trust placed in the police – all of which are part of the maintenance of the integrity of police shootings and all of which are integral to the functioning of the NYPD. IO 52 more than passes muster under the special needs balancing test of the Fourth Amendment and is constitutional. The complaint must be dismissed.

## CONCLUSION

**WHEREFORE**, defendants respectfully request that plaintiffs' motion for a preliminary injunction be denied, that defendants' motion to dismiss be granted, or in the alternative, that defendants' motion for summary judgment be granted, that the complaint be dismissed in all respects, that the request for relief be denied in its entirety, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              February 26, 2008

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-187
                              New York, N.Y. 10007-2601
                              (212) 788-0952

                    By:    **ECF**            /s/
                              Alan M. Schlesinger
                              Assistant Corporation Counsel